## GLEESON *v.* VIRGINIA MIDLAND RAILROAD COMPANY.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 287.   Argued April 6, 1891. — Decided May 11, 1891.

A land slide in a railway cut, caused by an ordinary fall of rain, is not an
" act of God " which will exempt the railway company from liability
to passengers for injuries caused thereby while being carried on the
railway.

It is the duty of a railway company to so construct the banks of its cuts
that they will not slide by reason of the action of ordinary natural
causes, and by inspection and care to see that they are kept in such
condition; and the failure to do so is negligence, which entails liability
for injuries to passengers caused by their giving way.

An accident to a passenger on a railway caused by the train coming in
contact with a land slide, raises, when shown, a presumption of negli-
gence on the part of the railway company, and throws upon it the burden
of showing that the slide was in fact the result of causes beyond its
control.

THIS is an action for damages brought in the Supreme Court
of the District of Columbia. It appears from the bill of excep-
tions that at the trial the evidence introduced by the plaintiff
tended to show that in January, 1882, he was a railway postal
clerk, in the service of the United States Post Office Depart-
ment; that on Sunday, the 15th of that month, in the dis-
charge of his official duty, he was making the run from
Washington to Danville, Virginia, in a postal car of the de-
fendant, and over its road; that in the course of such run
the train was in part derailed by a land slide which occurred
in a railway cut, and the postal car in which the plaintiff was
at work was thrown from the track upon the tender, killing
the engineer and seriously injuring the fireman; and that the

plaintiff, while thus engaged in performing his duty, was thrown violently forward by the force of the collision, striking against a stove and a letter-box, three of his ribs being broken, and his head on the left side contused, which injuries are claimed to have permanently impaired his physical strength, weakened his mind and led to his dismissal from his office, because of his inability to discharge its duties.

Defence was made by the company under these propositions: that the land slide was caused by a rain which had fallen a few hours previous, and therefore was the act of God; that it was a sudden slide, caused by the vibration of the train itself, and which, therefore, the company was not chargeable with, since it had, two hours before, ascertained that the track was clear; and that the injury resulted from the plaintiff's being thrown against the postal car's letter-box, for which the company was not responsible, since he took the risk incident to his employment.

At the close of the testimony, the court having given to the jury certain instructions in accordance with the requests of the plaintiff, charged the jury at defendant's request, as follows:

"I. The burden of proof is on the plaintiff to show that the defendant was negligent, and that its negligence caused the injury.

"II. The jury are instructed that the plaintiff, when he took the position of a postal clerk on the railroad, assumed the risk and hazard attached to the position, and if, in the discharge of his duties as such, he was injured through the devices in and about the car in which he was riding, properly constructed for the purpose of transporting the mails, the railroad is not liable for such injury unless the same were caused by the negligent conduct of the company or its employés.

"III. The court instructs the jury that, whilst a large degree of caution is exacted generally from railway companies in order to avert accidents, the caution applies only to those accidents which could be prevented or averted by human care and foresight, and not to accidents occurring solely from the act of God. If they believe that the track and instruments

of the defendant were in good order, its officers sufficient in number and competent, and that the accident did not result from any deficiency in any of these requirements, but from a slide of earth caused by recent rains, and that the agents and servants of the company had good reason to believe that there was no such obstruction in its track, and that they could not, by exercise of great care and diligence, have discovered it in time to avert the accident, then they should find for the defendant.

" IV.  If the jury believe from the evidence that the defendant's instruments, human and physical, were suitable and qualified for the business in which it was engaged; that the accident complained of was caused by the shaking down of earth which had been loosened by the recent rains, and that the earth was shaken down by the passing of this train, then the accident was not such an act of negligence for which the defendant would be responsible, and the jury should find for the defendant."

The counsel for the plaintiff objected to the granting of the first of these prayers, and asked the court to modify it by adding the words " but that the injury to the plaintiff upon the car of the defendant, if the plaintiff was in the exercise of ordinary care, is *prima facie* evidence of the company's liability."  But the court refused to modify the said prayer, and the plaintiff duly and severally excepted to the granting of each one of said prayers on behalf of the defendant, and to the refusal of the court to modify the said first prayer, as requested.  The jury, so instructed, found for the defendant and judgment was rendered accordingly.  That judgment having been affirmed by the court in general term, (5 Mackey, 356,) this writ of error was taken.

Mr. *Guion Miller* (with whom was Mr. *Isaac H. Ford* on the brief) for plaintiff in error.

Mr. *Linden Kent* for defendant in error.

There can be no question about the correctness of the law as laid down by the court in the prayer as given.  Does the

modification requested by the counsel for the plaintiff, as a separate and independent proposition, correctly state the law applicable to this case?

We say that it does not and there was no error in refusing it.

In other words, it was contended that notwithstanding the fact that the proximate cause of the accident was an act of God, still the burden of proof was upon the defendant to show that it was not liable for the injury sustained by the plaintiff.

It is true that the presumption of negligence, from the simple happening of the accident in which a passenger is injured, may arise where the accident results from any defective arrangement, mismanagement or misconstruction of the thing over which the defendant has immediate control and for the management, service and construction of which it is responsible, or where the accident results from any omission or commission on the part of the railroad company with respect to those matters entirely under its control. According to the current of authorities the presumption of negligence on the part of the defendant arises in such cases. *Le Barron* v. *East Boston Ferry Co.*, 11 Allen, 312, 316; *S. C.* 87 Am. Dec. 717; *Western Transportation Co.* v. *Downer*, 11 Wall. 129; *Clarke* v. *Barnwell*, 12 How. 272; 2 Redfield on Railways, 256; *Shoemaker* v. *Kingsbury*, 12 Wall. 369; *Railroad Company* v. *Reeves*, 10 Wall. 176.

The injury in this case having resulted from an act of God established as a *fact*, the *presumption* of negligence from the simple occurrence of the accident cannot arise. *Railroad Co.* v. *Reeves*, 10 Wall. 176; *Gillespie* v. *St. Louis & Kansas City Railroad*, 6 Missouri App. 554.

We submit that the immediate and proximate cause of the accident having been disclosed as an act of God, it was not error for the court to refuse to modify the first prayer of the defendant by adding to it as applicable to this case the words: "*But that the injury to the plaintiff upon the car of the defendant, if the plaintiff was in the exercise of ordinary care, is prima facie evidence of the company's liability.*"

To have given the modification asked in the light of the plaintiff's testimony would have been practically to have said

to the jury, "It is true that the plaintiff has shown by his testimony that the act of God was the proximate cause of the injury, but I direct you to ignore these circumstances of this case. It is only sufficient for you to know in this case that an accident happened and the injury resulted, and that the defendant is not only negligent but is liable for such injuries, unless he can and has shown affirmatively that he was not negligent." In this view the case is distinguished from the cases of *Stokes* v. *Saltonstall*, 13 Pet. 181; *Railroad Co.* v. *Pollard*, 22 Wall. 341.

MR. JUSTICE LAMAR, having made the foregoing statement, delivered the opinion of the court.

It will be most convenient in the decision of this case to consider the third instruction first. The objections made to it are three:

(1.) "It assumes that the accident was caused by an act of God, in the sense in which that term is technically used." It appears that the accident was caused by a land slide, which occurred in a cut some fifteen or twenty feet deep. The defendant gave evidence tending to prove that rain had fallen on the afternoon of Friday and on the Saturday morning previous; and the claim is that the slide was produced by the loosening of the earth by the rain. We do not think such an ordinary occurrence is embraced by the technical phrase "an act of God." There was no evidence that the rain was of extraordinary character, or that any extraordinary results followed it. It was a common, natural event; such as not only might have been foreseen as probable, but also must have been foreknown as certain to come. Against such an event it was the duty of the company to have guarded. Extraordinary floods, storms of unusual violence, sudden tempests, severe frosts, great droughts, lightnings, earthquakes, sudden deaths and illnesses, have been held to be "acts of God"; but we know of no instance in which a rain of not unusual violence, and the probable results thereof in softening the superficial earth, have been so considered. In *Dorman* v. *Ames*,

12 Minnesota, 451, it was held that a man is negligent if he fail to take precautions against such rises of high waters as are usual and ordinary, and reasonably to be anticipated at certain seasons of the year; and we think the same principle applies to this case. *Ewart* v. *Street*, 2 Bailey (S. C.) 157, 162; *Moffat* v. *Strong*, 10 Johns. 11; *New Brunswick Steamboat Co.* v. *Tiers*, 4 Zabr. (24 N. J. Law) 697; *Great Western Railway* v. *Braid*, 1 Moore P. C. (N. S.) 101.

(2.) The instruction does not hold the defendant "responsible for the condition of the sides of the cut made by it in the construction of the road, the giving way of which caused the accident." We think this objection is also well taken. The railroad cut is as much a part of the railroad structure as is the fill. They are both necessary and both are intended for one result; which is the production of a level track over which the trains may be propelled. The cut is made by the company no less than the fill; and the banks are not the result of natural causes, but of the direct intervention of the company's work. If it be the duty of the company (as it unquestionably is) in the erection of the fills and the necessary bridges, to so construct them that they shall be reasonably safe, and to maintain them in a reasonably safe condition, no reason can be assigned why the same duty should not exist in regard to the cuts. Just as surely as the laws of gravity will cause a heavy train to fall through a defective or rotten bridge to the destruction of life, just so surely will those same laws cause land slides and consequent dangerous obstructions to the track itself, from ill-constructed railway cuts. To all intents and purposes a railroad track which runs through a cut where the banks are so near and so steep that the usual laws of gravity will bring upon the track the *débris* created by the common processes of nature, is overhung by those banks. Ordinary skill would enable the engineers to foresee the result, and ordinary prudence should lead the company to guard against it. To hold any other view would be to overbalance the priceless lives of the travelling public by a mere item of increased expense in the construction of railroads; and after all, an item, in the great number of cases, of no great moment.

In a late case in the Queen's Bench Division, *Tarry* v. *Ashton*, 1 Q. B. D. 314, two out of three judges declared in substance that a man who, for his own benefit, suspends an object, or permits it to be suspended, over the highway, and puts the public safety in peril thereby, is under an absolute duty to keep it in such a state as not to be dangerous. The facts of the case were these: The defendant became the lessee and occupier of a house, from the front of which a heavy lamp projected several feet over the public foot pavement. As the plaintiff was walking along in November, the lamp fell on her and injured her. It appeared that in the previous August the defendant employed an experienced gas-fitter to put the lamp in repair. At the time of the accident a person employed by defendant was blowing the water out of the gas-pipes of the lamp, and in doing this a ladder was raised against the lamp-iron or bracket, from which the lamp hung; and on the man mounting the ladder, owing to the wind and wet, the ladder slipped, and he, to save himself, clung to the lamp-iron, and the shaking caused the lamp to fall. On examination, it was discovered that the fastening by which the lamp was attached to the lamp-iron was in a decayed state. The jury found that there had been negligence on the part of the defendant personally; that the lamp was out of repair through general decay, but not to the knowledge of the defendant; that the immediate cause of the fall of the lamp was the slipping of the ladder; but that if the lamp had been in good repair, the slipping of the ladder would not have caused the fall. Upon this it was held by Lush and Quain, JJ., that the plaintiff was entitled to a verdict on the ground that if a person maintains a lamp projecting over the highway for his own purposes, it is his duty to maintain it so as not to be dangerous to persons passing by; and if it causes injuries, owing to a want of repair, it is no answer on his part that he had employed a competent man to repair it. 1 Thomp. on Negligence, 346-7.

The case of *Kearney* v. *London &c. Railway*, L. R. 6 Q. B. 759, 762, 763, (in the Exchequer Chamber,) cited in the brief of counsel for plaintiff in error, is directly in point. In that case the plaintiff had been injured while walking along a pub-

lic highway, by a brick which fell from a pier of the defendant's bridge. A train had just passed, and the counsel for the defendant submitted that there was no evidence of negligence. The court (Kelly, Chief Baron,) says: "There can be no doubt that it was the duty of the defendants, who had built this bridge over the highway, to take such care that, where danger can be reasonably avoided, the safety of the public using the highway should be provided for. The question, therefore, is, whether there was any evidence of negligence on the part of the defendants; and by that we all understand such an amount of evidence as to fairly and reasonably support the finding of the jury. The Lord Chief Justice, in his judgment in the court below, said, *res ipsa loquitur*, and I cannot do better than to refer to that judgment. It appears, without contradiction, that a brick fell out of a pier of the bridge without any assignable cause except the slight vibration caused by a passing train. This, we think, is not only evidence, but conclusive evidence, that it was loose; for otherwise so slight a vibration could not have struck it out of its place. . . . The bridge had been built two or three years, and it was the duty of the defendants from time to time to inspect the bridge, and ascertain that the brickwork was in good order and all the bricks well secured."

The principle of these decisions seems to us to be applicable to this case. If such be the law as to persons who, for their own purposes, cause projections to overhang the highway not constructed by them, *a fortiori* must it be the law as to those who, for their own purposes of profit, undertake to construct the highway itself, and to keep it serviceable and safe, yet who allow it to be practically overhung, from considerations of economy or through negligence.

We think the case of the *Virginia Central Railroad Co.* v. *Sanger*, 15 Grattan, 230, 237, to which we are referred by counsel for plaintiff in error, is strongly illustrative of the principle in this case, to which it bears a close resemblance. Some rocks had been piled up alongside of the track for the purpose of ballast, and some of them got upon the track, causing the injury. In rendering its opinion the court says:

" Combining in themselves the ownership, as well of the road as of the cars and locomotives, they are bound to the most exact care and diligence, not only in the management of the trains and cars, but also in the structure and care of the track, and all the subsidiary arrangements necessary to the safety of the passengers.   And as accidents as frequently arise from obstructions on the track, as perhaps from any other cause whatever, it would seem to follow, obviously, that there is no óne of the duties of a railroad company more clearly embraced within its warranty to carry their passengers safely, as far as human care and foresight will go, than the duty of employing the utmost care and diligence in guarding their road against such obstructions."   See also *McElroy* v. *Nashua & Lowell Railroad,* 4 Cush. 400; Hutchinson on Common Carriers, 524; *Bennett* v. *Railroad Co.,* 102 U. S. 577.

This view of the obligation of the company of course makes it immaterial that the slide was suddenly caused by the vibration of the train itself.   It is not a question of negligence in failing to *remove* the obstruction, but of negligence in allowing it to get there.

We are also of the opinion that it was error to refuse to modify the first instruction for the defendant as requested by the plaintiff.

Since the decisions in *Stokes* v. *Saltonstall,* 13 Pet. 181, and *Railroad Company* y. *Pollard,* 22 Wall. 341, it has been settled law in this court that the happening of an injurious accident is in passenger cases *prima facie* evidence of negligence on the part of the carrier, and that, (the passenger being himself in the exercise of due care,) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight.   The rule announced in those cases has received general acceptance; and was followed at the present term in *Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551.

The defendant seeks to uphold the action of the court in refusing the modification prayed for, by distinguishing the case at bar.   It attempts to make two distinctions:

1. That the operation of the rule is confined to cases " where

the accident results from any defective arrangement, mismanagement or misconstruction of things over which the defendant has immediate control, and for the management, service and construction of which it is responsible, or where the accident results from any omission or commission on the part of the railroad company with respect to these matters entirely under its control."

2. That the injury from an act of God is established as a fact, wherefore the presumption of negligence from the occurrence of the accident cannot arise.

Neither of these attempted distinctions is sound, since, as has been shown, the defect was in the construction of that over which the defendant did have control and for which it was responsible, and since the slide was not caused by the act of God, in any admissible sense of that phrase. Moreover, if these distinctions were sound, still, as a matter of correct practice, the modification should have been made.

The law is that the plaintiff must show negligence in the defendant. This is done *prima facie* by showing, if the plaintiff be a passenger, that the accident occurred. If that accident was in fact the result of causes beyond the defendant's responsibility, or of the act of God, it is still none the less true that the plaintiff has made out his *prima facie* case. When he proves the occurrence of the accident, the defendant must answer that case from all the circumstances of exculpation, whether disclosed by the one party or the other. They are its matter of defence. And it is for the jury to say, in the light of all the testimony, and under the instructions of the court, whether the relation of cause and effect did exist, as claimed by the defence, between the accident and the alleged exonerating circumstances. But when the court refuses to so frame the instructions as to present the rule in respect to the *prima facie* case, and so refuses on either of the grounds by which the refusal is sought to be supported herein, it leaves the jury without instructions to which they are entitled to aid them in determining what were the facts and causes of the accident and how far those facts were or were not within the control of the defendant. This is error.

*Judgment reversed, and cause remanded with direction to order a new trial, and to take further proceedings not inconsistent with this opinion.*

MR. JUSTICE BREWER dissented from the opinion and judgment in this case, on the ground that it is in contravention of the long established rules as to what may be considered on an incomplete record.