# GLEESON

*v.*

# THE VIRGINIA MIDLAND RAILROAD COMPANY.

CHARGE AND INSTRUCTIONS TO JURY; NEW TRIAL.

1. Where the charge of a trial judge states the case fairly to the jury and covers all the points contained in the instructions asked, the refusal to grant instructions, which in themselves are correct, is not reversible error.
2. Whether in causes pending in the General Term of the Supreme Court of this District, which were transferred to this court by the act of Congress creating the Court of Appeals, this court has the jurisdiction which was possessed by that court under Sec. 805, R. S. D. C., to review on appeal the action of a trial court in refusing a motion for a new trial on the ground of the insufficiency of the evidence to sustain the verdict, *quaere.*

No. 65.   Submitted June 15, 1893.—Decided September 21, 1893.

HEARING on a motion by the plaintiff for a new trial on a bill of exceptions in an action to recover damages for personal injuries.   *Judgment affirmed.*

THE FACTS are sufficiently stated in the opinion.

*Mr. Guion Miller* for the plaintiff in error.

*Mr. E. Duffy* for the defendant in error.

Mr. Justice MORRIS delivered the opinion of the Court:

This is a suit for damages for personal injuries alleged to have been sustained by the plaintiff through the negligence of the defendant and its agents, while the plaintiff was being carried as a postal clerk in the service of the United States in a postal car of the defendant on a portion of the defendant's railroad between the city of Washington and the city of Danville in the State of Virginia.   It appears that on Sunday, January 15, 1882, while the plaintiff was on one of the defendant's trains in the discharge of his official duty as a postal

clerk, the train was in part derailed, near Rock Fish station, in the State of Virginia, by a landslide, which apparently struck the train as it was passing through a cut about twenty-five feet deep, and threw some of the cars from the track. The plaintiff claimed to have been thrown against a stove and injured.

The cause of the landslide which superinduced the accident is not very apparent from the testimony. There had been some rains a day or two before the occurrence—" such rains as were usual at that season of the year," according to the testimony of one of defendant's witnesses—" profuse rains," according to another, yet which had not swollen the streams, and there was no extraordinary storm or freshet. The cut had been constructed in 1856, and there never had been any accident there before. The defense of the company was that the accident was due to some unforeseen and unavoidable cause against which they could not have guarded by any reasonable amount of human foresight.

The case has been tried twice, and both times the jury have rendered a verdict for the defendant.

After the first trial the case went to the Supreme Court of the United States. It is found reported in 140 U. S., 435. Upon that trial the presiding justice had granted certain instructions to the jury, which the Supreme Court held to have been erroneous, and therefore reversed the decision. At the second trial, upon the conclusion of the testimony, instructions were asked on both sides, five on behalf of the plaintiff, and ten on behalf of the defendant. The presiding justice gave one of the plaintiff's prayers, and declined to give the other four, stating to the jury at the same time as follows:

" Now, gentlemen of the jury, I have thought best in this case to decline to give all of the plaintiff's prayers, except one, and that is the one upon the subject of damages; and I substitute others prepared by myself, which I think fairly set forth the law of the case."

When he came to deal with the defendant's prayers, the presiding justice said:

" Now, gentlemen, I turn to the prayers which have been proposed upon the part of the defendant, part of which I give to you and part of which I decline." And he gave seven, and refused three, out of the ten instructions. And he proceeded also to charge the jury independently of the instructions.

His refusal to grant the plaintiff's prayers which were refused, his granting of the defendant's prayers, so far as they were granted, and his alleged unfair discrimination in regard to the rejection of the plaintiff's prayers, are now alleged as error by the plaintiff.

We do not propose to enter into any extended discussion of the instructions asked or refused on either side. While the plaintiff claims, and with some apparent justice, that some, if not all, of his rejected prayers are correct statements of the law, yet it is not seriously contended that the instructions substituted by the court and the charge given by the court to the jury do not fully cover all the points covered by the instructions which were refused. Nor is it seriously denied that the instructions given by the court were correct expositions of the law. An acute criticism might perhaps find some apparent inconsistency in the use of the degrees of comparison; but this is a difficulty that seems to pervade all the authorities on the subject. "A high degree of care," and " the highest degree of care," " great caution," and " the utmost caution," are expressions that, strictly speaking, are not interchangeable, and yet in many of the cases are used to mean substantially the same thing, without any intention of misleading the jury, and without having any such effect. It appears to us that, in this case, the presiding justice fairly and justly stated all the propositions of law that were necessary to be stated to the jury; and that the instructions given by him not only were in conformity with the decision of the Supreme Court of the United States in 140 U. S., but also covered all the points contained in the instructions requested by the plaintiff. Under these circumstances, it is not error to refuse instructions that in themselves may be correct expo-

sitions of the law.   This has been repeatedly determined by the courts, and needs no citation of authorities.

As to the charge of unfair discrimination, we fail to find any support for it in the record.

We find no error in the rulings of the court in regard to the instructions asked, or in its charge to the jury.

The case came up to the General Term of the Supreme Court of the District of Columbia, not only upon these rulings upon questions of law, but likewise, under Section 805 of the Revised Statutes of the United States for the District of Columbia, on an appeal from the decision of the trial justice refusing a motion for a new trial on the ground of the insufficiency of the evidence to sustain the verdict.   Whether, in the causes pending in the General Term of the Supreme Court of the District of Columbia which were transferred to us by the act of Congress creating our court we have the jurisdiction, which was possessed by that General Term, to revise the action of the trial justice in this regard, may perhaps be doubted.   But without deciding that question, we fail to see anything in the record of this cause that would justify us, in a review of the facts, to determine either that the jury was at fault in its verdict, or that the presiding justice was at fault in not setting aside that verdict.

On the whole, we see no reason to disturb the judgment of the lower court in this case; and that judgment is, therefore, affirmed with costs.

*Affirmed.*