ILLINOIS CENTRAL RAILWAY CO., Plaintiff in Error, v. ALVAN SOLINSKY, Defendant in Error.

ILLINOIS CENTRAL RAILWAY CO., Plaintiff in Error, v. MARY EVELYN SOLINSKY, Defendant in Error.

Western Section.   February —, 1930.

Burch, Minor & M[c]Kay and Sively, Evans & McCadden, all of Memphis, for plaintiff in error.

Wilson, Gates & Armstrong, of Memphis, for defendant in error.

HEISKELL, J. These two suits were brought in the Circuit Court of Shelby County to recover damages sustained by the plaintiffs (we will designate the parties as plaintiff and defendant according to their status in the court below) while passengers on the defendant's train near Mounds, Illinois, on August 6, 1928.

Plaintiff Alvan Solinsky in his declaration sues for $100,000 damages and avers that on August 6, 1928, while he was a passenger on defendant's train going from Memphis to St. Louis, the defendant carelessly and negligently caused the train on which plaintiff was riding, to collide with another train owned and operated by the defendant.

Plaintiff does not allege any specific act of negligence that caused the collision, merely alleging that the defendant was guilty of negligence in causing two trains to collide. The ground of negligence alleged in the declaration is as follows:

"On said date and at said time, while he was a passenger on said train, the defendant carelessly and negligently caused the train on which plaintiff was riding, going to St. Louis, to be run down and into and have a collision with another of its said trains, said collision having taken place near Mounds, Illinois, which collision resulted in the wrecking and overthrowing of the train on which he was a passenger, as well as causing the same to be thrown from the track."

In the first count of plaintiff's declaration he alleges that as a result of said collision he sustained certain personal injuries. In the second count plaintiff, alleging the same act of negligence, avers that as a result of the collision his wife, who was also a passenger, was injured and that as a result of her injuries "he has lost the services of his wife and will continue to lose the consortium with his said wife," and in addition has been required to expend a large sum of money for medical, hospital and doctors' bills.

In the third count of his declaration plaintiff alleges that as a result of said negligence he was caused to lose in said wreck certain jewelry to the value of $1150. It is further averred that this jewelry was insured in an insurance company for 90 per cent of its value, and that said 90 per cent of the value has been paid to plaintiff by the insurance company, so that the suit is brought and prosecuted for and on behalf of the insurance company to the extent of the payments so made.

Plaintiff, Mrs. Mary Evelyn Solinsky sues for $100,000 and avers in the first count that she was a passenger on the train of the defendant on August 6, 1928, when the defendant negligently and carelessly caused its two trains to collide.

The act of negligence alleged in her declaration is identical with the act of negligence alleged by Alvan Solinsky in his declaration. She does not allege any specific negligence which caused the collision, but merely alleges that the collision itself was negligence.

Plaintiff in her first count seeks to recover for certain personal injuries sustained by her.

In her second count plaintiff seeks to recover the value of certain jewelry which she alleges was lost in the wreck. She avers that this jewelry was insured in an insurance company for 90 per cent of its value, and that the insurance company has paid her 90 per cent of the value, so that the suit is maintained for the use and benefit of the insurance company for the amount so paid her by it.

To both declarations defendant interposed a plea of not guilty and contributory negligence.

A trial was had on the issues thus made. The two cases were by consent of counsel tried together before the same jury and on the same evidence, resulting in a verdict against the defendant in the two suits in the sum of $57,035.

The jury returned a verdict for Alvan Solinsky for $28,150, of which amount $15,000 was assessed for personal injuries, $12,000 for loss of services of wife and doctors' bills, and $1150 for loss of jewelry.

The jury gave Mrs. Mary Evelyn Solinsky a verdict for $28,885, of which amount $23,750 was for personal injuries, and $5105 as compensation for the jewelry.

Thereafter defendant filed its motions for a new trial, which motions were by the court overruled, and the defendant thereupon prayed and has perfected an appeal in the nature of a writ of error to this court.

It is conceded that the defendant, the Illinois Central Railroad Company, was a common carrier of passengers between Memphis and St. Louis.

It was shown without dispute that plaintiffs purchased tickets, paid the usual fare and were passengers on defendant's passenger train, The Chickasaw, between Memphis and St. Louis.

It was further shown without dispute that while the passenger plaintiffs were asleep in their berth, two of defendant's passenger trains collided a short distance north of Mounds, Illinois, causing a terrible wreck, and that in that wreck, the Pullman car in which plaintiffs were passengers was entirely derailed and practically destroyed and that every car on both trains, except, probably the baggage car on the southbound train, was derailed and entirely off the track.

Plaintiffs contented themselves with this proof of their status as passengers on a common carrier and the further proof that this common carrier caused or allowed two of its passenger trains to collide and be derailed and wrecked and the car in which plaintiffs were traveling to be entirely derailed, wrecked and destroyed.

The theory advanced by the defendants to explain this collision of its passenger trains with the consequent wreck and derailment is substantially as follows:

It is claimed by the defendant that a car of steel pipe sixteen feet long, twelve inches in diameter, was properly loaded at Birmingham, Alabama, consigned to Omaha, Nebraska.

It is further claimed that this pipe was properly inspected at Birmingham, at Haleyville, Alabama, Jackson, Tennessee, and

Mounds, Illinois, and found in good condition and properly loaded at all of these places.

It is further claimed that, notwithstanding this, a piece of this pipe fell from a north-bound freight train, about a mile north of Mounds, Illinois, without the knowledge of the crew of the freight train.

It is further claimed that southbound passenger train 203 struck this pipe and knocked it within striking distance of the northbound track; that the engineer and fireman believed that they had struck a torpedo and that in this belief they made no report of the occurrence at Mounds although they found a mark on the pilot of the engine at that place.

It is further claimed that after southbound passenger train No. 203 had left Mounds, on its way to Cairo Junction, about six miles to the south, the engineer and fireman on this train discussed the occurrence and concluded that it might not have been a torpedo which the train struck, but might have been some obstruction and that when they came to this conclusion, the engineer instructed the fireman to notify the engineer of ''The Chickasaw,'' No. 16, which they were due to meet at Cairo Junction, to be looking out for an obstruction about a mile north of Mounds, and that this was done.

It is claimed that after the notification was given by the fireman to the engineer on the northbound ''Chickasaw,'' the engineer on southbound No. 203 and the roundhouse foreman at Cairo Junction made a further inspection and discovered an additional mark on his engine and thereupon the roundhouse foreman was sent to notify the dispatcher at Cairo Junction.

It is further claimed that on receiving this notice the dispatcher at Cairo Junction got in touch with the yard foreman at Mounds and instructed him to look out for this obstruction, but that before he could go with a switch engine to the place where the pipe had fallen, northbound No. 16 had passed Mounds, struck the pipe, knocked it over against the southbound track and knocked this track out of line so as to render it dangerous to a train; that immediately thereafter, southbound No. 3, going at a rate of speed in excess of sixty miles an hour, struck this defective track, leaped from the rails and crashed into northbound Chickasaw, which had come to a standstill.

It is claimed that the engineer and fireman on the northbound Chickasaw kept a vigilant lookout for obstructions, but were unable to see any before they struck the pipe.

The defendant advances this theory in explanation of the wreck and in substantiation of its claim that it exercised the highest practicable degree of care, was guilty of no negligence and hence was entitled to a directed verdict.

The defendant has filed seventeen assignments of error. The first is that there is no evidence to support the verdict. The second and third that the verdict is excessive, and the fourth is that the court erred in charging the jury as to the doctrine of res ipsa loquitur.

The plaintiffs after introducing proof that they were passengers on the train of defendant, a common carrier, and were injured in a wreck caused by a collision between two of defendant's trains and at the same time lost their jewelry, rested their case and invoked the doctrine of res ipsa loquitur. Whether there is anything in the first assignment, that there is no evidence to support the verdict, depends upon the construction to be given to the rule as to the inference of negligence to be drawn from the fact of the collision, and how far the evidence of defendant destroys such inference. The charge which defendant says is erroneous is as follows:

"To these causes of action, as plaintiffs have set the same up in their declarations, the defendant has interposed two pleas.

"First: it pleads what is commonly known in the law as the plea of not guilty, and by its plea of not guilty it means to state to the court and jury that it is not guilty of the alleged acts of negligence complained of against it by the plaintiffs in their declaration, and by its plea of not guilty, the defendant puts in issue and denies every material allegation of the plaintiffs' declarations, and casts upon the plaintiffs the necessity of proving every material allegation in their declarations necessary to make out their cases by the preponderance of the evidence.

"So the court charges you that the plaintiffs must make out their cases by the preponderance of the evidence."

And again:

"Now, the court has stated to you that the plaintiffs must make out their cases by the preponderance of the evidence. The court now states to you that the defendant must make out its plea of contributory negligence by the preponderance of the evidence."

On the question of what was meant by the preponderance of the evidence, the court charged as follows:

"In determining upon which side the preponderance of the evidence is, the jury should take into consideration the relationship of the witness to either of the parties, if so related, the opportunities of the several witnesses for seeing and knowing the things about which they testify; their conduct and demeanor while testifying; their interest, if any, in the result of the suit; and the probability or improbability of the truth of the several

statements, in view of all the other evidence, facts and circumstances proved in the trial.''

After explaining to the jury the meaning of certain words and phrases, which the court stated would be used in the charge, the charge continued:

"If you find from the preponderance of the evidence, that the defendant, through its agents and servants operating its trains, was not in the exercise of due care in their operation, but was guilty of negligence; and if, you further find that its negligence directly and proximately contributed to said collision and the plaintiffs' resultant injuries, then you should find for plaintiffs and return your verdict for them on the first counts of their declarations. There is a doctrine in the law known as res ipsa loquitur, which Latin phrase translated means 'the thing itself speaks.' This doctrine has been referred to in argument by counsel in the case, and the meaning of this doctrine, gentlemen, with reference to this lawsuit, is that when said trains collided, the law raised the presumption that defendant was guilty of negligence that caused said collision. This, however, is a rebuttable presumption and the law permits the defendant to rebut or overcome said legal presumption by competent and credible proof; and the defendant in this case maintains that the facts and circumstances shown in the proof rebut and overcome said legal presumption and show that it was guilty of no negligence which directly and proximately contributed to said collision.''

Error is assigned upon the last portion of this quotation from the charge, but in order to get the force and effect of the portion attacked by defendant, it is necessary to set out as much of the charge as we have done.

The contention of defendant on this question is as follows:

"We submit, therefore, that the court was in error when he told the jury that upon proof of the collision the law 'raised the presumption that the defendant was guilty of negligence that caused said collision.'

"Only in the absence of any explanatory evidence by the defendant should the court have told the jury that upon proof of the collision, it, in its discretion, may or may not, as it saw fit, infer negligence.

"We also insist that the court was in error in telling the jury that upon proof of the collision the law raised a presumption of negligence, and that while this presumption was rebuttable, it nevertheless remained until and unless the defendant 'rebut and overcome said legal presumption by competent and credible proof.' The court thereby charged the jury, in effect, that the

burden of proof was on the defendant to show that it was not guilty of negligence; indeed, the court in so many words told the jury that the burden of proof was on the defendant when he told the jury that 'the defendant in this case maintains that the facts and circumstances shown in the proof rebut and overcome said legal presumption and show that it was guilty of no negligence which directly and proximately contributed to said collision.' And there cannot, we think, be any question but that the jury so understood it.

"As the defendant did not rest when the plaintiffs proved that they were passengers and that there was a collision of trains and that they were injured but, on the other hand, placed before the jury, in great detail, all the facts and circumstances preceding and leading up to the collision and all the facts and circumstances of the collision, any presumption of law had disappeared from the case and there should have been no reference whatever to any presumption of law. The doctrine of res ipsa loquitur had already performed its full function when the case was passed to the jury, and it was then for the jury to determine on the evidence alone, and all rational inferences from the evidence, whether the defendant had been guilty of negligence, and it was prejudicial error for the court to throw into the scale of evidence a presumption of law that the defendant had been negligent.

"The court should have told the jury that there was no presumption and that the burden of proof was not upon the defendant, but, on the contrary the court should have told the jury that when all the facts and circumstances of the wreck had been testified to by the witnesses no inference of negligence could be inferred by them from the proof of the collision, but that they must determine from all the evidence whether the defendant was guilty of negligence or not. In other words, when all the proof was in, the jury could not then draw an inference of negligence from the proof of the collision, but they must find negligence, if it exists, from the entire body of all the evidence. Railroad v. Turnipseed, 219 U. S., 35; Western Atlantic R. Co. v. Henderson, P. S., 73, L. Ed. p. 519, decided May 27, 1929; Sweeney v. Erving, 228 U. S., 233; Wigmore on Evidence, Vol. 5, par. 2491."

In Transit Co. v. Venable, 21 Pick., 460 (1900), the plaintiff was a passenger on a train of the Chattanooga Rapid Transit Company, which under contract with the Chattanooga, Rome & Southern Railway Company had the right to use the latter's tracks. The train on which plaintiff was a passenger had a head-on collision with a train of the latter company, resulting in injuries to the plaintiff.

He sued both companies. At the trial, after proving the accident and the resulting injury, plaintiff rested. He introduced no affirmative evidence in support of the allegations in his declaration that the two railway companies were negligent. The court charged the jury:

"If . . . the proof shows there was a head end collision . . . the law would presume that there was negligence on the part of the defendant, the Rapid Transit Company, and your verdict should be for the plaintiff, provided he was injured." 21 Pick., 460 at 464.

A verdict in favor of the plaintiff was made the basis of a judgment against the Transit Company and a new trial was granted as to the Railway Company. The Transit Company appealed in error from the action of the lower court in refusing to grant it a new trial, and the judgment was affirmed. The court, through Mr. Justice Beard, thus stated the law:

"Being a passenger, the rule is that negligence was to be presumed from evidence of the collision. 4 Ell. on R. R., Sec. 1635, and cases cited in notes. Applying the instructions to the facts of the case and in the light of the authorities, we think there was no error committed by the trial judge in this regard."

This case was followed in Illinois Central Railroad Company v. Kuhn, 23 Pick., 106 (1901). Kuhn was a passenger on a train of the Illinois Central Railroad Company which was derailed and thrown down an embankment, seriously injuring the sleeping plaintiff. At the trial, the court refused to charge, at the request of the defendant, that 'the burden is upon the plaintiff, Kuhn, of showing, affirmatively, negligence on the part of the defendant." The case going to the jury on all the evidence, plaintiff received a verdict.

From the action of the trial judge in refusing a new trial the railroad company prosecuted an appeal and the judgment was affirmed.

Commenting on the correctness of the court's refusal to give the charge requested by the defendant railroad, the court said, in part, through Mr. Justice Caldwell:

"Although not insurers against all damage caused otherwise than by the act of God or the public enemy, as common carriers of goods are, passenger carriers are nevertheless legally bound to exercise the utmost degree of care, skill and foresight to accomplish a safe transportation; and this obligation as to railway carriers, includes the requisite attention not only in the selection and use of suitable carriages, motive power, appliances and servants, as in the case of stage lines but also the proper construction and maintenance of roadbed and tracks. (Citing cases.)

398

"Human experience and observation, in connection with the laws of nature, have shown that a faithful discharge of those duties ordinarily prevents the upsetting of the stage coach or the derailment of the railroad car, and that such a catastrophe seldom occurs except through the omission of some part of the carrier's obligation.

"Therefore, all the law required of this plaintiff, in the first instance, was to show that the defendant was a common carrier, that he was its lawful passenger, and that the injuries sued for were caused by the derailment and overturning of the coach in which he was traveling.

"That, without more, was sufficient to constitute a prima-facie case of actionable negligence on the part of the defendant; and, to rebut the presumption of negligence arising from proof of those facts, it was incumbent on the defendant to prove that it had done all within its power to avoid a disaster of that kind. Stokes v. Saltonstall, 13 Peters, 181; Railroad Co. v. Pollard, 22 Wallace, 341; Gleeson v. Virginia Midland Railroad Co., 140 U. S. 435, 443; 2 Shear. & Red. on Neg., Secs. 516, 517; 4 Elliott on Railroads, Sec. 1634; Ray's Neg. of Imp. Du., Sec. 5, pp. 24, 25; 5 Am. and Eng. Enc. of Law (2 Ed.), 627.

"Other cases to the same effect are very numerous, but they need not be cited in this opinion. Many of them are referred to in notes by the text writers just mentioned.

"Transit Co. v. Venable, 105 Tenn., 460, which is a case of collision, stands upon the same ground as this one, and, hence, is authority for the foregoing proposition."

In Illinois Central Railroad Co. v. Porter, 117 Tenn., 13, the rule laid down in the foregoing cases is approved and the Kuhn case is quoted from so that the language itself is approved. At page 20 of the 117 Tenn. case, the court also says:

"The company in this case has offered no explanation of the derailment of its train, but has sought to counteract the presumption of negligence arising from the accident by proof that it had exercised proper care in the selection of its employees, that its road was in good order, and that its equipment was perfect. It further offered evidence tending to show a very efficient system of inspection both of its roadbed and track, as well as of its engines, cars and running gear."

This is exactly the method of defense in the present case. No explanation is offered as to how the iron pipe got on the track, but defendant seeks to counteract the presumption of negligence by proof that all its employees in any way connected with the collision, had exercised the highest degree of care.

We do not understand that these cases have ever been modified or criticised by our court, yet counsel for defendant insist that the rule laid down in Tennessee is that the proof in the present case offered by plaintiff does not create a presumption of negligence, but merely warrants the jury, in its discretion, if it sees fit to infer negligence, and that it is for the jury to say whether or not it is incumbent on the defendant to meet the proof offered by any counteracting proof. . Also that the rule is that whenever any proof is offered in rebuttal the question of res ipsa loquitur automatically disappears from the case and should not be mentioned by the trial court. Several Tennessee cases are cited to support these contentions. The first is North Memphis Savings Bank v. Union Bridge & Const. Co., 128 Tenn., 161. It is sufficient to say in regard to this citation that the opinion refers to the three cases relied on by plaintiff in the present case, the Porter case, the Kuhn case and the Venable case without a suggestion of disapproval. If they are distinguished in any way it is only in that they are spoken of as "passenger cases in which was also necessarilly involved the element that the injury to the passenger was a breach of the contract to safely carry." This case cannot be considered as at all in conflict with the rule laid down in the three cases

The next case cited is Gill v. Brown, 130 Tenn., 174. This does hold that res ipsa loquitur does not impose on the defendant the burden of proving by a preponderance of the evidence that he has not been negligent. This proposition is not in dispute. Lewis v. Casenburg, 157 Tenn., 187, simply holds that it is not incumbent on defendant to rebut the presumption by a preponderance of evidence.

The case of Western Atlantic R. Co. v. Henderson, U. S., 73 L. Ed., 519, is not in conflict with the Tennessee cases relied on by plaintiff. In fact there is an indication in the language of the court that if the Georgia statute had been confined to a case like the present, it would have been valid. The court said:

"Upon the mere fact of collision and resulting death, the statute is held to raise a presumption that defendant and its employees were negligent in each of the particulars alleged, and that every act or omission in plaintiff's specifications of negligence was the proximate cause of the death; and it makes defendant liable unless it showed due care in respect of every matter alleged against it. . . .

"Legislation declaring that proof of one fact or group of facts shall constitute prima-facie evidence of all ultimate fact in issue is valid if there is a rational connection between what is proved and what is to be inferred. A prima-facie presumption casts upon the person against whom it is applied the duty

of going forward with his evidence on the particular point to which the presumption relates. A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it, violates the due process clause of the 14th Amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty or property. Manley v. Georgia, 279 U. S., 1, ante, 232, 49 Sup. Ct. Rep., 215, and cases cited.

"The mere fact of collision between a railway train and a vehicle at a highway grade crossing furnishes no basis for any inference as to whether the accident was caused by negligence of the railway company or of the traveler on the highway or of both or without fault of any one. Reasoning does not lead from the occurrence back to its cause. And the presumption was used to support conflicting allegations of negligence." 73 L. Ed., 520.

Sweeney v. Erving, 228 U. S., 233, 57 L. Ed., 815, also points out the distinction between passenger cases and others.

We need only look to the decisions of the Supreme Court of the United States in cases of passengers invoking the rule of res ipsa loquitur on proof of collision or derailment, to see that, that court is in entire accord with our cases of the same character.

Stokes v. Saltonstall, 13 Pet., 181, 10 L. Ed., 115, was the case of a passenger in a coach which was upset, and it was held prima-facie evidence of negligence.

New Jersey Railroad & Transit Co. v. Pollard, 22 Wall., 341, 22 I. Ed., 877, was a passenger case and the charge was sustained that the presumption having obtained the "defendant must show the burden being upon it, that its whole duty was performed."

In Gleason v. Virginia Midland Railroad Co., 140 U. S., 435, 35 I. Ed., 458, the court said:

"Since the decisions in Stokes v. Saltonstall, 13 Pet., 181, and Railroad Company v. Pollard, 22 Wall., 341, it has been settled law in this court that the happening of an injurious accident is in passenger cases prima-facie evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care), the burden then rests upon the carrier to show that its whole duty was performed and that the injury was unavoidable by human foresight. The rule announced in those cases has received general acceptance; and was followed at the present term in Inland & Seaboard Coasting Co. v. Tolson, 139 U. S., 551."

And in Patton v. Texas & Pacific Railway Co., 179 U. S., 658, 45 L. Ed. 361 (1901), the Supreme Court of the United States in dealing with the suit of an employee against his employer Railway Company,

delivered itself, through Mr. Justice Brewer, of the following pertinent statement of the law applicable to the present discussion:

"That while in the case of a passenger the mere fact of an accident carries with it a presumption of negligence on the part of the carrier, a presumption which in the absence of some explanation or proof to the contrary is sufficient to sustain a verdict against him, for there is prima facie a breach of his contract to carry safely, Stokes v. Saltonstall, 13 Pet., 181; Railroad Company v. Pollard, 22 Wall., 341; Gleeson v. Virginia Midland Railroad, 140 U. S., 435, 443, a different rule obtains as to an employee. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence."

The court thus identifies the two expressions "prima-facie case" and "presumption of negligence" and briefly sums up the express holdings of the three cases discussed immediately above. We find no Tennessee or United States Supreme Court case of a passenger injured in a collision in which it is held that the collision is not prima-facie evidence of negligence; that it does not create a presumption which makes it incumbent on the defendant to bring forward countervailing proof. That is proof enough at least to neutralize the presumption or prima-facie evidence.

But it is contended for defendant that the portion of this charge; "This, however, is a rebuttable presumption and the law permits the defendant to rebut or overcome said legal presumption by competent and credible proof," is equivalent to saying to the jury that the presumption must be answered by a preponderance of evidence. We do not think so. The court nowhere says the burden of proof is on defendant, much less that the burden is on defendant to prove absence of negligence by a preponderance of evidence. If the court had said the burden was on the defendant, it would be construed to mean the burden of coming forward with proof to meet the presumption. The court tells the jury in emphatic terms that the burden is upon plaintiffs to make out their case by a preponderance of evidence. This is repeated several times. Nothing of this sort is said as to defendant. The only word which can be criticised in the charge is the word "overcome." "The law permits the defendant to rebut or overcome." According to Webster, rebut means "to contradict, meet or oppose by countervailing proof" and "countervail" means "to act against with equal force, power or effect; to thwart or overcome by such action." So we have rebut and overcome brought to nearly equal meaning. Countervail is synonymous with neutralize, yet it means to thwart or overcome. As we understand the rule res ipsa loquitur, in a case like the present, raises a presumption which makes it incumbent on the defendant to bring forward enough proof to neutralize

the effect of the presumption, but the burden remains on the plaintiff to make out his case by the preponderance of evidence. In Dayton Bus Line v. Lynch, 6 Tenn. App., 470, Judge Snodgrass says the presumption makes it "necessary for the defendant to introduce proof to the extent of showing an equipoise or even balance to defeat the plaintiff's case" and in the Kuhn case it is held that to bring about this equipoise, requires proof by the defendant that it has done all in its power to avoid an accident of that kind. In the Gleeson case, 140 U. S. 435, a passenger case in which the doctrine of res ipsa loquitur applied, the court said "the burden then rests upon the carrier to show that its whole duty was performed and that the injury was unavoidable by human foresight." This was a passenger case after the 14th Amendment.

It will not do to say that the presumption disappears as soon as defendant comes forward with some proof. If this is the rule, then defendant can introduce a scintilla of evidence in rebuttal and rest and insist that plaintiff must make out the negligence of defendant by affirmative proof. This would destroy the whole doctrine of res ipsa loquitur and of a prima-facie case. This would put upon the plaintiff the burden of proving facts exclusively within the knowledge of defendant. If any evidence by defendant does not destroy the presumption and eliminate it from the case, then how much evidence is required? Manifestly that amount which the presumption makes it incumbent on the defendant to bring forward, enough to rebut the inference of negligence, to neutralize the effect of the presumption and leave the evidence in equipoise. If this is not the rule, then defendant could have introduced any one witness and have rested. If the prima-facie case has any force and effect, that force and effect must last until neutralized by countervailing evidence. If this is contrary to the 14th Amendment, then the 14th Amendment has destroyed both res ipsa loquitur and the prima-facie case.

The court in the charge set out the whole theory of the defense, summed up its testimony and told the jury if they found the facts to be as set out in defendant's evidence and it showed a proper degree of care, then the verdict should be for defendant. What else could the court have charged? The idea of the defendant in the present case seems to be that the only province of res ipsa loquitur or a prima-facie case is to take the case to the jury. Then when defendant introduces a scintilla of proof in rebuttal, the presumption disappears and must not be mentioned by the trial judge on pain of error, but plaintiff must be left to prove negligence affirmatively. We do not so understand the law. The court simply told the jury that the proof of plaintiff created a presumption of negligence which defendant could rebut, and then in substance said the question was, did the evidence of defendant rebut the presumption. As shown before herein, the Supreme Court of the United States in the Henderson

case held merely that "a statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it, violates the due process clause of the 14th Amendment." That was not a suit by a passenger for injury in a collision. That was not a case for the application of the doctrine. The present case is. We find no error in this portion of the charge.

Under the fifth assignment it is contended that the court committed error in failing to submit to the jury the question whether or not the amount of jewelry carried by plaintiff and lost in the wreck was reasonable. Counsel for plaintiff concede the rule contended for by defendant as to reasonable baggage, but say there is no dispute whatever as to the facts and the facts show the reasonableness of the jewelry carried, therefore there was nothing to leave to the jury. We think this is true. The proof showed the husband lost a ring, the wife a brooch. They were going to a place where fashionable dressing was the custom. The jewelry was such as they were accustomed to wear. If they were entitled to wear it at the hotel to which they were going, how better could they get it there than to carry it with them? Of what use is jewelry except to wear when wanted for proper occasions? We find no error in the action of the court.

The first, sixth, seventh and eighth assignments relate to the contention that there is no evidence to support the verdict and the request for a directed verdict by defendant refused by the court. The substance of the contention, based upon these assignments is that the plaintiff introduced no affirmative proof of negligence and that defendant had destroyed the inference from the collision by proof that its employees had not been negligent. As before stated, defendant introduced no affirmative proof to account for the collision. It is not shown how the iron pipe happened to be upon the track, how it fell or did it fall from the gondola car of freight train 76 and when. The defendant attempts to show by a process of elimination that no employee in any way connected with this accident was in any way guilty of any negligence. The plaintiffs insist that defendant's proof not only fails to show absence of negligence, but shows negligence. Plaintiffs say that southbound 203 struck an obstruction north of Mounds; that engineer and fireman on arriving at Mounds noticed signs on the pilot indicating that the engine had encountered an obstruction on the track; that they did not notify the conductor according to rule and did not give notice to anyone at Mounds. Arriving at Cairo Junction they did notify engineer of north-bound passenger 16 or "Chickasaw;" that later, the engineer of 203 and the roundhouse foreman at Cairo Junction having discovered other marks on the engine of 203, the dispatcher at Cairo Junction was notified and he phoned to Mounds, got a yard clerk who notified the yardmaster there, who got out the switch engine after some delay and started to the place indicated north of Mounds to remove the ob-

struction, but before he got there the collision occurred. While he was getting out the switch engine No. 16 passed Mounds. Why did not the dispatcher at Cairo Junction stop No. 16 at Mounds? Why did not the operator at Mounds get a message to stop 16? Witnesses for defendant say there was an operator in the station at Mounds. If the danger was sufficient to hurry out the switch engine to remove the obstruction, it would seem No. 16 should have been stopped at Mounds. Right here there is a strange omission in the proof of defendant. Neither the dispatcher at Cairo Junction nor the operator at Mounds are put upon the stand. Defendant insists their testimony would have been merely corroborative of that offered, but would it? We do not know where the operator at Mounds was. Did the dispatcher at Cairo Junction talk to him? If so, what did he say? If he talked with him, why did he not tell him to stop the Chickasaw? Why did the message go to the yard clerk, Nelms, 2000 feet from the station and then say nothing about stopping 16? The jury was entitled to draw any fair inference against defendant as to the testimony of these witnesses present but not introduced. The reason given by defendant for not stopping the Chickasaw is, that the engineer and fireman on that train had been warned about the obstruction and the proximate location thereof. Then why did that train run into it and cause all the damage by knocking the pipe against the southbound track and thereby causing the collision? Here we have the pipe dropped in some way from freight train 76 going north, struck by 203 passenger train going south, struck again by 16 passenger train going north and knocked against the southbound track, spreading it just as No. 3 southbound arrived at over 60 miles an hour. Taking the evidence of defendant there is enough to support the verdict based on the negligence of defendant.

In addition to what has been said, the plaintiffs insist that the evidence shows that the iron pipe was not loaded according to defendant's own rule and that no adequate inspection of the car load of pipe was made at points south of where the pipe was dropped. There is something in this, too, that would support the verdict.

As to the contention that it was not necessary to stop 16 because it had been warned, it must be borne in mind that the engineer of 203 and the roundhouse foreman at Cairo Junction found other marks on the engine of 203 after 16 left Cairo Junction; that they considered it necessary to notify the dispatcher and he considered it important to send a hurry call to Mounds. Why was not the red signal run up for 16?

A number of assignments are based upon the refusal of the trial court to give special instructions requested by defendant. We have examined these requests and compared them with the charge given and we find no error in refusing to give them.

This leaves to be considered the assignments that the verdicts are excessive. First as to Mrs. Solinsky. When we consider all the facts and circumstances of her case we cannot regard the amount allowed her as excessive. She was a young bride, 22 years of age, possessing health and beauty. In the night the shock of the collision leaves her jammed in the wreck with her left arm crushed and dangling. It is three hours before she reaches a hospital. Her suffering is about as great as possible then and afterwards. Her arm is amputated as near the shoulder as to the elbow. Her nervous system is wrecked. She fears for her husband and is obsessed with the apprehension that if and when he recovers he will not want a maimed, one-armed girl for a bride. Then her suffering continues and when she gets up and about she cannot dress herself. She has studied and prepared herself for dramatic teaching in case of need. She cannot hope to do anything in this way. She cannot help her husband as she did. Her life expectancy is forty years. There are plenty of cases to warrant the amount of this verdict, and many of those cited to the contrary can be distinguished, on the ground that the injury was not so aggravated or that they relate to a time when money was much more valuable. We are not willing to disturb the amount of this verdict.

In the case of Alvan Solinsky, the jury returned this verdict:

"We, the jury, find for the plaintiff and assess damages to the sum of $28,150 of which amount we assess $15,000 for personal injuries, $12,000 for loss of services of wife and doctor bills and $1150 for loss of jewelry."

As to the amount allowed for personal injuries there can be no complaint. He was young and strong, succeeding as a traveling salesman. Had seven ribs broken, unconscious for three days. In plaster cast for weeks. Suffered concussion of brain, resulting in traumatic neurosis, causing loss of sexual power, and is incapacitated to earn his livelihood as before. No fault can be found with this amount.

The amount allowed for jewelry is correct. The $12,000 includes $4,516.75 for doctors' bills, leaving $7,483.25 for loss of services of wife. No objection is made to the amount allowed for doctors' bills, but it is contended by defendant that there is nothing to support the allowance for loss of services.

Alvan Solinsky sued originally for loss of consortium, but during the trial waived the right to recover for this, reserving the right to recover for loss of services. In regard to this, the record contains a colloquy between court and counsel:

"Mr. Armstrong: Now, if your Honor please, I am going to ask that the ladies retire from the courtroom for a moment, please.

"The Court: Well.

"Q. Mr. Solinsky, speaking of your nervousness and concussion of the brain, has that, or not, had any effect on your ability to perform the sexual act? A. Yes.

"Q. Well, state what it is, how it has affected you? A. I was unable to perform the sexual functions.

. . . . . .

"Mr. Armstrong: That is all. Take the witness.

"The Court: Now, while we are on that, we will dispose of this whole thing, so the ladies can come back. Now, you allege loss of the services of the wife, and loss of consortium.

"Mr. Armstrong: Yes, sir.

"The Court: That lets that part out.

"Mr. Armstrong: No sir.

"The Court: Because he received such physical injuries as that he, himself, could not do it, but, if he recovers for these injuries to himself, then can he recover,—you have got no evidence yet that she was injured in such a way as that she could not have sexual intercourse.

"Mr. Armstrong: No.

"The Court: And so he has not shown the loss of consortium. In his suit of services of his wife—

"Mr. Armstrong: Here is my position about that, if your Honor please, to make it perfectly clear—

"The Court: Yes.

"Mr. Armstrong: I may be able to show and hope the doctors will so testify, that this condition of his is the result of nervousness and shock, and will clear up—

"The Court: Well, if the wife is injured in such a way that she cannot perform the sexual act, and he is all right, he can show that he has lost it, and then he can recover for that damage, but where he says himself that his injuries are such that he cannot perform it,—and there is no injury to her, then the loss of consortium, that is a physical injury to himself.

"Mr. Armstrong: I think your Honor is probably right, but I don't think we are in a position for your Honor to make a ruling on that until the evidence is all in.

"The Court: All right. Now, you gentlemen cross-examine about this first.

"Mr. Marion Evans: As I understand it, if your Honor please, he alleges loss of consortium that your Honor was talking about, but don't allege any such physical injury to this man.

"Mr. Armstrong: Yes, it comes in as a result of the nervous shock.

"Mr. Marion Evans: Yes, but nervous shock don't put anybody on notice of anything of that kind.

"Mr. T. A. Evans: I think that that is a special damage that he must specially allege,—and he did not do it.

"Mr. Armstrong: Well, I will just ask to amend and put that in. He told Dr. Wood all about it.

"The Court: Well, if you want another amendment and allege that, I will allow it."

In the charge, the court said to the jury:

"You may also consider, gentlemen, the loss of consortium, that is, the peculiar society and intimacy which exists between husband and wife and which does not exist between persons in any other relationship in life—"

After the charge, counsel for plaintiffs thus addressed the court:

"Mr. Armstrong: If your Honor please, in view of the nature of Mr. Solinsky's injuries as claimed by the plaintiff—

"The Court: How is that?

"Mr. Armstrong: In view of the nature of Mr. Solinsky's injuries, as claimed by the plaintiff, I desire to waive any claim for the loss of consortium, the relation between husband and wife, and ask your Honor to withdraw that.

"The Court: Well, gentlemen, you need not consider then as an element of damage the loss of consortium alleged in plaintiff's declaration.

"Mr. Armstrong: We claim loss of services."

Counsel for plaintiffs insist that this makes it plain that all the husband waived was the right to recover for loss of the intimate relations with his wife referred to by the court in the charge. This seems to have been the understanding of the Court, but the defendant says even conceding that, he could not in any event recover for loss of the services of the wife as a servant, or as a wage earner without special allegation and proof. Therefore, all that could be recovered for in any view of this case, would be the loss of the wife's ability to superintend the servants, maintain and operate the home and that all this she can do as well as before her injury; and therefore upon this record there can be no recovery for loss of services. Loss of services should be pleaded with particularity and clearly proved. Such damages if suffered is susceptible of definite proof. There is no such proof in this case. We feel that the trial court and this court have gone perhaps to the limit in sustaining the verdicts in favor of defendants for personal injuries. We have given consideration not only to the verdicts and the action of the trial judge in approving them, but in the case of Mrs. Solinsky especially, we have given weight to the pathetic and distressing situation of a young woman obliged to go through life with one arm, but we are of the opinion that so much of the verdict in favor of Alvan Solinsky as was allowed for loss of services of his wife is not supported by any evidence and therefore as to this amount $7483.25, the judgment in his favor must be modified. With this exception all assignments of error are overruled and the judgments of lower court are affirmed with interest and costs.

Owen and Senter, JJ., concur.