KINNAIRD v. NORRIS.—150 S. W. (2d) 722.

Middle Section.   March 19, 1941.

Petition for Certiorari Denied by Supreme Court, May 17, 1941.

E. A. Langford, of Cookeville, and A. B. Humphreys, Jr., and Willard Hagen, both of Lebanon, for plaintiff below.

E. H. Boyd, H. C. Vaden, and J. B. Thompson, all of Cookeville, for defendant below.

HOWELL, J.  This is a suit by the plaintiff Robert Kinnaird against the defendant John Norris, in the Circuit Court of Putnam County for the alienation of the affections of plaintiff's wife, Flaudie Kinnaird. The declaration is in two counts, alleging that the defendant by various schemes, plans and artifices enticed the affections of plaintiff's wife from him and deprived him of the society, companionship, consortium and help of his wife wilfully and maliciously intending to thus injure and humiliate the plaintiff, causing the wife to separate from plaintiff and destroy their union of marriage. It is further alleged that the defendant in this manner so overreached and overcame his said wife as to thereby induce her to become intimate and engage in acts of lewd and immoral conduct with him causing her to leave the plaintiff and go away and live with the defendant.

The defendant filed a plea of the general issue saying that he was not guilty of the matters and things alleged in the declaration.

The case was heard before a jury and resulted in a verdict for the plaintiff in the amount of $1,000.

After a motion for a new trial was overruled the defendant perfected his appeal in the nature of a writ of error and has assigned errors.

The first three assignments of error which were principally relied upon by the defendant in argument are to the effect that there is no evidence to support the verdict of the jury.

Without detailing all of the facts developed in this record in this unfortunate case, we deem it sufficient to say that the plaintiff and

his wife were married about 1917 or 1918 and at the time this suit was brought they had nine children. He, the plaintiff had been a tenant farmer and had known the defendant for fifteen or eighteen years and in 1936, he and his family moved to the defendant's farm and lived in a small tenant house, the defendant and his wife living in the farm house on the place.

In October, 1939, the plaintiff and his family moved from Putnam County to Wilson County and the separation between plaintiff and his wife occurred on March 1, 1940, in Wilson County.

Sometime after plaintiff and his family moved to defendant's farm, the defendant's wife left him and went to live with her son.

The plaintiff and his witnesses detail many occurrences which aroused the suspicions of the plaintiff and he says that he finally decided to move to Wilson County thinking this would better the situation, but that defendant made frequent trips to his home in Wilson County and finally on March 1, 1940, came in his truck and took defendant's wife back to his own home in Putnam County. The plaintiff says he did not see his wife after that until she went to Lebanon in connection with a divorce suit she had filed against him. This divorce case was not tried. The plaintiff further testified that he loved his wife and children and had done all he could to take proper care of them.

The defendant, a man sixty-three years old, says in substance that he had always tried to do what he could for the plaintiff and his family and that the various acts that he had been accused of were only kindnesses such as he would do for anybody; that when he took the plaintiff's wife from her home on March 1, 1940, it was for the purpose of carrying her to a Doctor at Cookeville and keeping her near the Doctor's office where she could receive medical attention. He admits that he slept in the same room with her while she was sick and says that he had never been guilty of any wrongdoing with plaintiff's wife, but had only been kind to her.

The defendant introduced witnesses who testified that the physical condition of the wife of plaintiff was such that any sexual intercourse would have been most painful.

The jury heard all the testimony of many witnesses for both plaintiff and defendant and the verdict indicates that they believed the plaintiff and his witnesses, and we are satisfied that there is ample evidence in the record to justify the finding of the jury.

The fourth assignment of error is:

"The verdict of the jury is contrary to law."

This is wholly insufficient as an assignment of error.

In the case of Provident Life & Accident Ins. Co. v. Gibson, 5 Tenn. App., 516, on page 517, Owen, Judge, said:

"The last two assignments, the fourth and fifth, are overruled because this court does not weigh the evidence to ascertain where the

preponderance lies, and an assignment that the verdict or judgment is contrary to the law and the facts is not equivalent to an assignment there is no evidence to support the verdict and judgment; and hence it is bad in this court. Record v. Cooperage Co., 108 Tenn., 657, 69 S. W., 344.''

The fifth assignment of error, that the Court erred in overruling the defendants motion for a new trial, is likewise not effective. In the same volume just above mentioned in the case of Markland v. General Hospital, 5 Tenn. App., 519, on page 521, Owen, Judge, said:

''The fourteenth error is that the court erred in not granting a new trial on the various grounds set forth in the motion for a new trial.

''This assignment is too general, and is overruled. Thurmond v. Whittaker, Vol. 1, Court of Appeals, p. 111.

''The eleventh and thirteenth assignments of error insist that the verdict of the jury is not supported by the evidence and that the verdict of the jury is contrary to the law. These assignments of error cannot be considered in this court, as this is an appellate court and does not weigh evidence. Kirkpatrick v. Jenkins, 96 Tenn., [85], 87, 33 S. W., 819; Record v. Cooperage Co., 108 Tenn., [657], 660, 69 S. W., 334; [News] Publishing Co. v. Berger, 2 Higgins, [179], 183 [2 Tenn. Civ. App., 179].''

The sixth assignment of error is:

''The verdict of the jury savors of a capricious verdict, indicating prejudice and feeling against the defendant upon the part of the jury, and said verdicts is excessive.''

Considering the substance of the proof as stated above and the further fact that the defendant had practically retired from active work, owns a farm of 189½ acres with three houses on it, had a 1940 Chevrolet truck, together with some stock and farming tools and household goods, and was drawing $40 per month from the United States Government on account of the death of a son in the army, we do not think the verdict of the jury indicates any caprice or prejudice against the defendant or that it is excessive.

The seventh assignment of error is:

''General Humphreys, of counsel for the plaintiff, subjected the defendant, John Norris, to much ridicule, by his references to the defendant during the trial, and in the presence and hearing of the jury. Many of the questions which he asked witnesses on cross-examination, and many of his comments and remarks, ostensibly addressed to witnesses but patently intended for the jury as well, partook of the nature of sarcasm and ridicule of defendant, and even went to the extent of repeated facetious remarks about defendant's 'side burns.' Such comments, observations and characterizations of the defendant, John Norris, upon the part of said attorney for

the plaintiff were improper, and prejudice against the defendant was thus engendered in the minds of jury.''

Page 244 of the record is cited in this assignment and we find there that the defendant was referred to as ''Uncle John.'' Exception was taken and apparently sustained by the Court. Many of the witnesses had referred to the defendant frequently as ''Uncle John'' and we do not see how this reference to the defendant could have tended to affect the verdict of the jury. No other citations to the record appear in this assignment.

We are of the opinion that the defendant had a fair trial, the merits of the controversy have been reached by the judgment rendered and all assignments of error will be overruled, the lower Court affirmed and a judgment rendered here in favor of plaintiff and against the defendant and the sureties upon his appeal bond for $1,000 and interest from July 31, 1940, and the costs of the cause.

Crownover and Felts, JJ., concur.