MRS. SUE ELLA GOODRICH, Plaintiff-Plaintiff-in-Error, v. ROSA MORGAN, Defendant-Defendant-in-Error.—291 S. W. (2d) 610.

Middle Section. February 24, 1956.

Petition for Certiorari denied by Supreme Court, June 8, 1956.

Ned Lentz, R. T. Cochran, Nashville, for plaintiff in error.

Carl R. Hardin, Paul F. Bumpus, Nashville, for defendant in error.

HICKERSON, J. Mrs. Sue Ella Goodrich brought this suit against Rosa Morgan to recover damages for the alleged wrongful killing of Norman W. Goodrich, husband of plaintiff, by Rosa Morgan.

For cause of action plaintiff alleged:

"That on or about midnight on June 8th, 1953, the deceased, Norman W. Goodrich, was on his way home from work, walking along the northern sidewalk of

Mulberry Street in Nashville, Tennessee. The defendant lives on the Northwest corner of Mulberry Street and 5th Avenue, South, in Nashville, Tennessee. As the deceased was in the act of passing the defendant's home he was struck in the left breast by a pistol bullet fired by the defendant. As a result of this wound the deceased died shortly thereafter, having suffered great pain and mental anguish. The deceased was 68 years of age, regularly employed and in good physical condition. Small medical expenses and funeral expenses were incurred for the burial of deceased.

"Plaintiff further alleges that the area in and around Mulberry Street and 5th Avenue South, in Nashville, Tennessee, is a heavily populated area, poorly lighted by street lights and with sidewalks. The defendant's home is on a small lot and sits within a few feet of the sidewalk. Plaintiff alleges that the defendant was shooting her pistol on her property, but that said shooting was done in a highly reckless and negligent manner without proper care and regard for the lives of other people, especially that of the deceased. Due to such negligence of the defendant, and as the direct and proximate cause of defendant's negligence, the deceased, an innocent passer-by, was killed."

Paragraph IV of defendant's plea substantially states the ground upon which the suit was defended:

"Defendant pleads and positively denies that she is guilty of negligence which was the direct and proximate cause of the decedent's death, and that any action or conduct on her part was for the protec-

tion of her life and property and done solely and necessarily to save herself great bodily harm and injury and the destruction of her property and/or that said shot was fired at a felon, trespasser and intruder as she had no knowledge of the presence or whereabouts of the deceased, and that said shot was fired in any wanton, careless or negligent manner in total disregard of the lives of others, but with a view of stopping an assault upon her person and a trespass and intrusion upon her property."

The cause was tried to court and jury. At the conclusion of plaintiff's proof, the trial judge directed a verdict for defendant and dismissed plaintiff's suit.

To reverse that action and judgment of the trial court, plaintiff has prosecuted her appeal in error to this Court.

Plaintiff has assigned one error:

"The trial court erred in sustaining the defendant's motion for a directed verdict at the conclusion of the plaintiff's proof, and in overruling the plaintiff's motion for a new trial, based on the ground that it was a question for the jury to determine whether the defendant was guilty of negligence under the facts and circumstances.

"These rulings of the court were erroneous and prejudicial to the defendant because it was a question for the jury to decide if there were negligence on the part of the defendant."

■ ■ The rules relating to the consideration of a motion for directed verdict are correctly stated in Lackey v. Metropolitan Life Insurance Co., 30 Tenn. App. 390, 397, 206 S. W. (2d) 806, 810, as follows:

"In view of much of the argument in the briefs, it seems well to recall the rule, so often stated in numerous cases, by which both trial courts and appellate courts must be governed in determining a motion for a directed verdict. That rule is based on the constitutional right of trial by jury; and it has been fashioned so as to preserve that right and at the same time to administer the common law separation of function by which the jury try the facts and the judge the law. 'There can be no constitutional exercise of the power to direct a verdict in any case in which there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence, upon the issues to be tried.' Tyrus v. [Kansas City, Ft. S. & M.] Railroad [Co.], 114 Tenn. 579, 594, 86 S. W. 1074, 1077; Brenizer v. Nashville C. & St. L. Ry., 156 Tenn. 479, 3 S. W. (2d) 1053, 8 S. W. (2d) 1099; Osborn v. City of Nashville, 182 Tenn. 197, 185 S. W. (2d) 510.

"As said so often, this rule requires trial judges and appellate judges, in considering a motion by defendant for a directed verdict, to look to all the evidence, to take as true the evidence for plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for plaintiff, to allow all reasonable inferences from it in his favor; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 556, 557, 249 S. W. 984; Walton [& Co.] v. Burchel, 121 Tenn.

715, 723, 121 S. W. 391, 130 Am. St. Rep. 788; [Provident] Life & Acc. Ins. Co. v. Prieto, 169 Tenn. 124 83 S. W. (2d) 251; Osborn v. City of Nashville, supra; Tennessee Cent. Ry. Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931; Poole v. First Nat. Bank of Smyrna [29 Tenn. App. 327] 196 S. W. (2d) 563, 567, 568.''

■ Applying these rules, there is material evidence in the record to support a finding by the jury of these facts:

Defendant lived in a thickly settled residential section of Nashville, Tennessee. She was awakened on the night of June 8, 1953, about midnight by a noise which sounded like a rattle of a window. Thinking someone was prowling around her home she took a pistol and sat down in a swing on her porch. She saw people passing her home on the sidewalk. A Negro man passed her home on the sidewalk; then waited until some other people had gone by and turned and came back to defendant's home. He entered the gate and crouched down on the ground watching a lady undress in the basement of defendant's home. For this moment, defendant had been waiting. She shot at the Negro with her pistol while he was crouched on the ground looking into the window. At the first shot, the Negro ran. Defendant shot at him one or two times as he ran. She heard someone call out, ''I've been shot.'' Immediately the deceased stumbled into her view mortally wounded by a pistol bullet in his breast. The bullet that killed the deceased was fired from the gun defendant was using to shoot at the Negro. The deceased was on the sidewalk by defendant's home when he was killed. He was in the line of fire of defendant's shots at the Negro, or some of them. The deceased was

on his way home from work when he was killed and was lawfully using the sidewalk.

Defendant could not see the deceased when she shot, because some shrubbery obstructed her view of the sidewalk where he was walking. She knew, however, that she was shooting towards the sidewalk where pedestrians did walk. She was a couragous woman. She deliberately set the stage to get a shot at the prowler who was disturbing her and her home. There was no evidence of an emergency. She expected a prowler, and when he came along, she cracked down on him.

The Negro was making no vicious attack on defendant. He was a "Peeping Tom." He made no attempt to fight back when defendant shot at him. To the contrary, he ran away; and, as stated, one or two of defendant's shots were fired at him when he was running away from her; and it was one of these shots which was fired while the Negro was running away that killed Mr. Goodrich.

Code, Section 11413 provides:

"Lawful resistance to the commission of a public offense may be made by the party about to be injured, or by others."

Code, Section 11414 provides:

"Resistance sufficient to prevent the offense may be made by the party about to be injured:

"(1) To prevent an offense against his person.

"(2) To prevent an illegal attempt by force to take or injure property in his lawful possession."

Under the ''Peeping Tom Act'' of Tennessee, prowling around a residence, ''for the purpose of spying or peeping therein'', is a misdemeanor. Code, secs. 11412.4 and 11412.5.

Tally v. Ayres 35 Tenn. 677, 678, involved the killing of a mare by the accidental discharge of a gun. Our Supreme Court said:

''The lawfulness of the act from which the injury resulted is no excuse for the negligence, unskilfulness, or reckless incaution of the party. Every one, in the exercise of a lawful right, is bound to use such reasonable vigilance and precaution as that no injury may be done to others. Nor is it material, in a civil action for the recovery of damages, whether the injury was wilful or not. It is no ground of defense that the mind or will did not concur in the act by which an injury was occasioned. The gist of the action is not the lawfulness of the act whence the injury proceeded; nor the existence of an evil intention, but it is the fault of the defendant, in neglecting to exercise such a reasonable degree of skill, or diligence, or caution, and prudent foresight, as, under the circumstances, might have avoided the injury.''

In Knott v. Wagner, 84 Tenn. 481, 1 S. W. 155, 157, defendant was sued in tort for shooting plaintiff while defendant was hunting birds. The court held:

''The law affords a party a remedy, by civil action, to recover damages for an injury to his person or property, caused either directly or consequentially by the negligence, inadvertance, or want of proper precaution on the part of another, although such injury may have been purely accidental and uninten-

tional. To constitute an available defense in such case it must appear that the injury was unavoidable, or the result of some superior agency, without the imputation of any degree of fault to the defendant. The mere lawfulness of the act from which the injury resulted is no excuse for the negligence, unskillfulness, or reckless incaution of the party. Tally v. Ayres, 3 Sneed, 677 [35 Tenn. 677]."

In 56 Am. Jur., 1009-1010, Weapons and Firearms, Section 27, this rule is stated:

"A person using a firearm or other weapon in the exercise of his self-defense is not liable for an injury unintentionally inflicted upon a bystander unless he is guilty of some negligence or folly in the use of the weapon. So long as he acts as a reasonably prudent man would act in a similar situation, he is not liable. Thus, where a person, in lawful self-defense, shoots at an assailant, and, missing him, accidentally wounds an innocent bystander, he is not liable for the injury if guilty of no negligence."

It is our definite opinion that the issues in this cause should have been submitted to the jury. We do not think that all reasonably prudent men must reach the conclusion that defendant was acting in her own necessary defense or in the defense of her property when she shot at this Negro who was fleeing from her property when the only crime which she said he committed was a misdemeanor.

Whether defendant exercised ordinary care in shooting toward a sidewalk where she knew people constantly walked when that sidewalk was hidden from her by thick shrubbery so she could not see who was using it, presents

a question upon which the minds of reasonably prudent men might differ. Furthermore, we think the very accident which did occur here was reasonably within the range of the risk caused by defendant's negligently shooting towards this sidewalk.

■ Where the issues of negligence and proximate cause depend upon ordinary care, or lack of it, the Court can very seldom determine such questions as a matter of law. Smith v. Sloan, 189 Tenn. 368, 255 S. W. (2d) 539, 227 S. W. (2d) 2; Foster & Creighton Co. v. Hale, 32 Tenn. App. 208, 222 S. W. (2d) 222.

■ It is a serious matter, fraught with great potentialities for harm, to shoot toward a sidewalk which is constantly used by pedestrians when defendant could not see who was using the sidewalk. The fact that the defendant was shooting at a fleeing criminal who was guilty of a misdemeanor, does not exonerate her from the duty of exercising ordinary care in shooting at the Negro.

The assignment of error is sustained and the judgment of the trial court is reversed and the cause remanded for new trial consistent with this opinion. Tax the costs of the appeal against the original defendant. Let the costs below be adjudged by that court upon final judgment there.

Felts, P. J., (Middle Section) and Shriver, J., concur.