# WILLIAM EARL HOOPER v. CHARLIE FRANCIS STARKEY et al.—297 S. W. (2d) 948.

Middle Section.   August 31, 1956.

Petition for Certiorari denied by Supreme Court February 8, 1957.

Emery B. Gill, Centerville, and Trabue & Sturdivant, Nashville, for Charlie Francis Starkey, et al.

James R. Brown, Centerville, for William Earl Hooper.

FELTS, J.   This action was brought by plaintiff below William Earl Hooper, a minor, by next friend, to recover damages for personal injuries suffered when he was struck by an automobile which was being driven by defendant Charlie Francis Starkey upon the business of his employer and co-defendant, General Shoe Corporation.

There was a verdict and judgment for plaintiff for $15,000.   Defendants appealed in error and insist that the Trial Judge should have directed a verdict for them, because there was no evidence of any negligence on their part, and because the undisputed evidence showed plaintiff was guilty, as a matter of law, of negligence which proximately caused his injuries.

In considering whether a verdict should have been directed for defendant, we must look to all the evidence, take the evidence for plaintiff as true, allow all reasonable inferences in his favor, and disregard all countervailing evidence.   Goodrich v. Morgan, 40 Tenn. App. 342 345, 291 S. W. (2d) 610, 612.   But we must consider so much of the evidence for defendants as is not in conflict

with the evidence for plaintiff, provided it comes from a witness or witnesses whose credibility is not in issue. Martin v. Braid Electric Company, 9 Tenn. App. 542, 558; Cude v. Culberson, 30 Tenn. App. 628, 209 S. W. (2d) 506; and cases there cited.

Plaintiff must recover, if at all, upon the negligence charged. The negligence charged in his declaration was that while walking "beside" the highway, well out of the way of those using said highway, he was struck by the automobile which was driven by defendant Starkey at night at a fast and reckless speed, in a grossly negligent manner, and in willful and wanton disregard of the rights and safety of others. So the first question is whether there was any substantial evidence to prove defendants were guilty of the negligence thus charged.

The accident happened about 9:15 p.m. Sunday, August 22, 1954, on Highway No. 100 near Wrigley, Tennessee, in front of the home of Leonard Randolph. This is a main, heavily-traveled thoroughfare from Nashville to Centerville and points beyond. It has a paved surface (width not shown) with graveled shoulders on both sides about three or four feet wide. It runs roughly north and south at the place of the accident. Randolph's house is on the west side of the highway back about 30 or 40 feet from it. A few feet north of this house there is a graveled driveway leading to the highway.

Plaintiff, a boy 18, was accompanied by another boy, Floyd Stone, 19 years old. There was a church a short distance west of the highway and 100 yards or so north of Randolph's house. Plaintiff and Stone had gone to this church "to pick up two girls" and walk home with them, they living near the highway some distance to the south.

When the boys reached the church, they found that the services had ended and the girls had gone, and they decided to overtake them.

They walked from the church along a path to the rear of Randolph's premises. It was dark and they called to Randolph and asked him to turn on his lights so they could see how to get to the highway. He turned on his porch light, and they walked along his driveway to the west shoulder of the highway, intending to cross over to the east (their left) side and walk south along the highway. But seeing the lights of two or three northbound cars approaching in the east traffic lane, they did not cross over, but turned to their right, and started walking south on the west shoulder, and while thus walking, facing the south, plaintiff was struck from behind by the car driven by defendant Starkey.

Starkey was driving alone in a 1954 Chevrolet automobile going from Nashville toward Centerville. It was stipulated that he was on business for his employer and co-defendant, General Shoe Corporation. There were only three witnesses to the accident: plaintiff, his companion Stone, and defendant Starkey. We summarize material parts of the testimony of each of them.

Plaintiff recalled that he looked toward the north and saw no approaching southbound traffic when he walked out to the west shoulder of the highway. He did not look back or to the north again, and did not see the car that struck him from behind. He testified on direct examination that he did not know whether he was on the pavement or the shoulder when he was struck. On his cross examination he testified:

"Q. Now, I believe you told Mr. Brown, you didn't know where you were; whether you were on the shoulder or on the pavement. A. Yes. We were walking on the highway not paying no attention. I know we was not out in the highway though. We were walking along the highway.

"Q. Do you remember whether you were on the shoulder—I mean the graveled part or the pavement. A. We were—I remember walking along there but after the car hit I don't know.

"Q. Were you walking on the pavement or on the shoulder? A. Walking on beside the highway.

"Q. Maybe you don't understand. It is black topped and it meets the graveled part. A. Yes.

"Q. Were you on the black top or the graveled? A. Walking along the graveled part at that time; the last time I remember we were walking beside the highway in the gravel.

"Q. Did you look back behind you at anytime? A. No, sir, I don't remember what happened don't remember whether I looked back or what I done.

"Q. Do you remember getting hit? A. No, I don't remember getting hit."

\*  \*  \*  \*  \*  \*

"Q. Do you remember the car striking you? A. No.

"Q. You don't know where you were? You might have been in the road? A. Yes, for all I know.

"Q. Or you might have been *three feet* on the pavement? A. Yes" (italics ours).

The witness Stone testified that when he and plaintiff saw the approaching northbound cars they turned to their right, headed toward Centerville, started walking south, Stone walking on the outside, to the right of Hooper and a foot or so in front of Hooper. On direct examination Stone said that Hooper, walking slightly behind him, was not on the black top, and that he did not look back and did not see the lights of Starkey's car approaching, and that he heard "brakes squall", and Hooper was struck, knocked against him, and over in the ditch.

On cross examination Stone said that he and plaintiff had walked a few steps from the driveway, that they were carrying no lights, that he was "two or three feet" off the pavement and that Hooper was slightly behind him to his left. He said:

"Q. And that he [Hooper] was nearest the pavement? A. Yes.

"Q. And about how far off the pavement that he was? A. Two or three inches.

"Q. His left foot was about how far off, is that the one you mean two or three inches? A. Yes, I think so."

Stone further said that after the northbound cars passed he and plaintiff "turned to go across" the highway, but that he "never did get to the highway, and he didn't think plaintiff did. He said:

"Q. After they [northbound cars] went by did you all start across then. A. We had turned and headed back.

"Q. Turned which way. A. Turned to go across but I never did get on the highway.

"Q. You never did? A. And I don't think he did.

"Q. You think he had just turned? A. Yes, just turned.

"Q. Now, Earl didn't he step on the highway. A. I don't think so.

"Q. Didn't he step one foot onto the pavement? A. I don't think he did.

"Q. Do you know. A. I don't know for sure, but I don't think he was on the pavement".

In a sworn statement made three days after the accident Stone said that as the last of the northbound cars was passing the point where he and plaintiff were, he "saw Earl [plaintiff] take a step with his left foot upon the paved portion of the highway. Since there was no traffic approaching from the S. W. [south] we intended to cross over to the S. E. [east] side at a slight angle to the south. I would say that Earl's left foot was at least a foot or or a foot and a half on the paved portion of #100 (the N. W. portion) when a car traveling S. westwardly struck him * *".

Defendant Starkey testified that he was driving between 40 and 50 miles per hour. As he approached the scene of the accident, the road curved to his left then there was a straight stretch of about 100 yards, and then the road curved to his right. That is, the accident happened in the middle of an "S" curve. As he approached plaintiff and Stone, Starkey saw them on the shoulder to the right of the highway. They seemed a safe distance from the pavement, he "let up on my throttle", and continued on. Seeing the light of a northbound car coming meeting him, he dimmed his lights, but could see that

plaintiff and Stone were "approximately two feet off the asphalt and *I didnt see any danger*" (italics ours). But suddenly plaintiff stepped on the pavement directly in front of his car. He testified:

"A. He was out so close and out in the middle and it happened so quick, I can't figure out whether he stepped or what, I can't figure it out; I can't figure how he got out there that quick; I didn't have time to blow my horn.

"Q. What did he do sir? Did he come out in front of your car? A. Yes, sir".

\* \* \* \* \* \*

"A. Well, when it flashed that he was on the highway it happened so quick and this car on this side of me and the boys there and I thought sure I was going to hit this car and I figured this car didn't know the danger and I tried to hold my car as close to the white line as I could with the brakes locked and I guess I skidded twenty-five feet before I come in contact with his body.

"Q. Did you ever go off the highway onto the shoulder? A. No, sir.

"Q. How close did you come to the shoulder? A. I would say in trying to avoid the boys and the car, I imagine I was approximately three feet from the edge of the asphalt. I could not move no further. It was so quick, I just couldn't move; I didn't think I had room enough to make it".

Thus as we have seen, plaintiff did not remember being struck, and did not know whether he was on the shoulder or on the pavement, and admitted he "might have been

three feet on the pavement''. Stone said that plaintiff was walking slightly behind him and nearer to the pavement, and the first he knew of the approach of defendant's car was the noise of brakes. He also said that they ''turned to go across'' the highway but he did not get on the pavement and did not think that plaintiff stepped on the pavement but said, ''I don't know for sure''.

So there was really no conflict in the evidence as to how this accident happened. As defendant Starkey approached, he saw plaintiff and Stone on the west shoulder at a safe distance from the highway. Seeing no danger, he proceeded, dimming his lights for a car meeting him, and suddenly and without warning, plaintiff stepped in the path of his car when he was too close to avoid the accident. Such is his testimony, and there is no real conflict between it and any evidence for plaintiff.

Such being the case, we think there was no evidence of any negligence on the part of defendants; that the only reasonable conclusion possible from the evidence was that the occurrence was a pure accident without fault on the part of defendant Starkey; and that a verdict should have been directed for defendants. This conclusion renders it unnecessary for us to consider the question of plaintiff's contributory negligence, or the other questions made by defendants as to the exclusion of the photograph of the skid tracks, and as to the amount of the verdict.

The judgment of the Circuit Court is reversed and a judgment will be entered here dismissing this action as upon the directed verdict. The costs of the cause are adjudged against plaintiff.

Hickerson and Shriver, JJ., concur.