# HAZEL DORRIS BARNARD and ROBERT BAR-NARD v. JAMES T. BINNS—326 S. W. (2d) 676.

Middle Section.   March 27, 1959.

Certiorari Denied by Supreme Court July 27, 1959.

James M. Hunter, Robert F. Brinkley, Gallatin, for plaintiffs.

John T. Conners, Jr., Nashville, Thomas Boyers, III, Thomas Boyers, IV, Gallatin, for defendant.

## I

## The Case

SHRIVER, J.   Plaintiff, Hazel Dorris Barnard, brought suit in the Circuit Court of Sumner County, against the defendant, James T. Binns, to recover for personal injuries sustained in an automobile accident which occurred on June 29, 1957, on Dobbins Pike in Sumner County about 2½ miles north of Gallatin, Tennessee.

Robert Barnard, husband of Hazel Dorris Barnard, filed suit against the defendant James T. Binns claiming damages for loss of services and consortium of his wife and damages to his automobile.

It was alleged that Mrs. Barnard was operating her husband's automobile, driving in a southerly direction on Dobbins Pike, and upon coming over a steep hill she was confronted by the automobile of the defendant, Binns, who was operating his automobile in a negligent manner in that he was driving on the wrong side of the road. Plaintiff, Mrs. Barnard, alleged that she sustained serious, painful and permanent injuries as the result of defendant's negligence.

Pleas of general issue were filed on behalf of the defendant, and the cases of the husband and wife were consolidated and tried together before Judge William P. Puryear on September 11, 1958 and resulted in a jury verdict in favor of Mrs. Barnard for $10,000 and in favor of Mr. Barnard for $5,000, consisting of $1,250 for automobile damages and $3,750 for loss of his wife's services, consortium, etc.

Motions for new trials were overruled and an appeal in error prayed and perfected to this Court.

## II

### Assignment of Error

There is only one assignment of error as follows:

"The trial court erred in not granting the defendant a new trial or suggesting a remittitur on the grounds that the verdict of the jury in both the case of Mrs. Barnard and the case of Mr. Barnard were excessive."

## III

Since the only assignment of error has to do with the alleged excessiveness of the verdict of the jury in each

case it will not be necessary to discuss in any great detail the facts surrounding the accident.

Mrs. Barnard was driving a 1955 Chrysler automobile owned by her husband and was the only occupant of the car at the time of the accident. She was proceeding in a southerly direction towards the city of Gallatin at 40 or 45 miles an hour when she came to the crest of a hill and was suddenly confronted by the automobile driven by the defendant, James T. Binns. She insists that Mr. Binns' automobile was on his left side of the road and that the accident was not the result of any negligence on her part. A photographer and a State Highway Patrolman testified as to position of the cars after the accident and that they smelled the odor of alcohol on Mr. Binns' breath at the time.

Defendant was driving a 1950 Dodge automobile and he and his wife were the only occupants of his car, hence, there were no witnesses to the accident other than the three occupants of these two cars.

Mr. Binns insisted that he was on his side of the road at the time of the accident and denied that he had been drinking any alcoholic beverages.

Mrs. Barnard testified that she was taken to a clinic in Gallatin after the accident where she was hospitalized for about five days and that she remained under a doctor's care from that time until the time of the trial, the accident having occurred, as hereinabove stated, on June 29, 1957, and the trial was had September 11, 1958.

She testified that she suffered a cracked bone at the base of her neck which gave her a great deal of trouble with headaches and pains in her neck and a cracked bone

at the lower part of her spine which affected her legs and that her back gave her constant trouble. She said that the pain in her back, legs and head continued up to the time she was testifying and that pains in her neck were worse than they had been six months before.

She was not put in a cast but was fitted with a brace for her back which she wore for some time. Although she did not wear it all the time, she had it on at the time of the trial.

She further testified that she went back to work about three weeks after the accident against the advice of her doctor but explained that she was so nervous at home that she cried much of the time and that her employer offered to lighten her duties if she went back to work so that she was glad to do so to occupy her mind.

She stated that she was not able to do the same work that she did before the accident; that prior to the accident her health was good; that she was never sick and had no aches and pains and that, with respect to her household duties, she did all of her work before the accident but afterwards she found it necessary to employ a maid to do the household work. This maid service cost approximately $175. She was asked whether there were other injuries in addition to the physical ones, to which she answered: "Yes, my nerves. I have been extremely nervous since the accident. * * * I suffer a great deal of pain in my neck and back and head and legs as well and my nerves are simply shot."

She stated that she had not had any trouble with her nerves before the accident, and that she had not been able to sleep well at all since the accident and that the doctor

had prescribed sedatives to enable her to sleep. She then testified further as follows:

"Q. Since your husband has filed for damages for loss of services and consortium as a result of the accident and injuries, state whether or not you have been able to give the time and attention to your husband since the accident as you did before? A. I have been extremely nervous and easily upset. I guess I'm not the same person I was. I guess I haven't been the companion I was before the accident.

"Q. Have you been examined by any doctor since the accident, other than Dr. Giles? A. I have been examined by Dr. Ben Fowler in Nashville.

"Q. I believe you stated the reason you went back to work was that you were so nervous at home you had to do something, even though your doctor advised you not to? A. Yes."

Dr. C. B. Giles testified for plaintiff and, among other things, stated that when Mrs. Barnard was brought to his clinic in an ambulance she was suffering from a moderate degree of shock and some concussion. She was hospitalized and complained chiefly of a pain in her lower back and shoulder and a severe headache.

He stated that X-ray pictures were made and then testified as follows:

A. "She had a fracture of the process off of the fourth lumbar vertebra, I believe it was, on the left —I will have to refer to my notes,—fracture of the lateral process, left fourth lumbar vertebra, and fifth, in the lower back, and the cervical vertebra was fractured. In laymen's language, she had her

back broken in two different places. She had a positive fracture of the process of the fourth lumbar vertebra and a possible abnormality of the fifth lumbar. In my opinion she also had some damage to that, that is the one just below the body of the vertebra, the fourth or wing process extending off was comminuted—that means broken up.

"Q. Show on here where that vertebra is. A. Well, the cervical vertebra is here at the base of the skull (indicating on X-ray). This is the dorsal or thoracic vertebra here (indicating).

"Q. Was she in pain when you saw her? A. Yes, she was suffering very extensive pain.

"Q. As a result of this collision, has she suffered pain for a considerable amount of time? A. Yes. We have never been able to keep her entirely free from pain—maybe for a few days—but it has always returned to her neck, and also low back pain.

"Q. Do you have any opinion as to whether or not in the future she will suffer pain from this accident? A. I think she will always suffer some neck pain, head pain, and especially back pain. That will go with her the rest of her days.

"Q. Does she have any children, Doctor? A. No.

"Q. If she were to have children, would she suffer any unusual pain? A. Yes, she would suffer a great deal of back pain through pregnancy and in lifting them after they were here.

"Q. Is it possible she might have some arthritic condition later on in life? A. Yes. Practically al-

ways from injuries or broken or bruised joints that shows up later on.''

He further testified that Mrs. Barnard has been a very nervous individual since the accident and then further testified as follows:

''Q. Have you any opinion, based upon your examination and her history, as to whether she will have permanent disability to the body as a whole? A. Yes, I think the limitations she will undergo from the injuries will be permanent and therefore that will be considered permanent disability.

''Q. About what percent to the body as a whole do you think she is injured? A. A minimum, I would say of 25%.

''Q. Would that be according to the work she is doing now, which is light work? A. I would think so, but would more particularly apply to home work.

''Q. If she had to be a saleslady or waitress, would it be more or less? A. I think it would increase to forty or fifty per cent under those circumstances.

''Q. And if she had children to take care of, what would you say about that—would she be very much limited? A. Yes, I think she would be greatly limited in that capacity.''

## IV

In view of the above evidence we would not feel justified in disturbing the verdict of the jury, approved by the trial judge, wherein Mrs. Barnard was awarded $10,000 damages.

It is stated by counsel for Mr. Binns that no question was made as to the award of $1,250 damages to Mr. Barnard's automobile in view of the fact that it was stipulated that damage was something more than $1,500. On the other hand, it is insisted that the award of $3,750 for loss of services, consortium, etc., of Mrs. Barnard, is excessive and that there is no evidence in the record to justify same.

■ In their brief, counsel for Mr. Binns quote from the charge of the Court wherein it was stated that the jury in arriving at the amount, if any, to be awarded to Mr. Barnard, should take into consideration the amount, if any, of expenses incurred by him in an effort to have his wife cured of her injuries, and also take into consideration the loss of his wife's services and consortium and the loss of companionship, aid and comfort of his said wife. It is argued that under our authorities this was an erroneous charge. However, as is pointed out in the briefs of counsel for both parties, no objection was made at the trial to this language, nor was it complained of in the motion for a new trial. Furthermore, there is no assignment of error as to the charge of the Court. Therefore, we are unable to consider this question on appeal, although it is true that there is no evidence in the record as to any expenses borne by the husband for doctor's and hospital bills or other expenses in connection with his wife's treatment for injuries received in this accident.

As was said in Coleman Co. v. Isbell, 159 Tenn. 459, 19 S. W. (2d) 243, quoting from Jacks v. Williams-Robinson Lumber Co., 125 Tenn. 123, 127, 140 S. W. 1066,

"The trial courts will not be put in error upon appeal upon questions of law or fact which have not been called to their attention."

Also see, Provident Life & Accident Ins. Co. v. Broome, 17 Tenn. App. 284, 66 S. W. (2d) 1041 and the cases therein cited with approval.

■ We come now to a consideration of the award to the husband for loss of services and consortium.

In the case of All v. John Gerber Co., 36 Tenn. App. 134, 252 S. W. (2d) 138, the Court, speaking through Judge Swepston, discussed in detail and at some length the question of damages for loss of services and consortium.

At page 141 of 252 S. W. (2d) it was said:

"That a recovery may be had for loss of consortium or properly proved, would seem to be beyond cavil according to most of the authorities and under our own cases despite the possible misconstruction of the opinion in Illinois Cent. Ry. Co. v. Solinsky, 12 Tenn. App. 389, 407.

\*　\*　\*　\*　\*　\*

"In Johnston v. Southern Ry. Co., 155 Tenn. 639, 645, 299 S. W. 785, 55 A. L. R. 932, the Court referring to the holding of the case next above cited here used the expression 'loss of services', obviously broadly as a synonym for consortium, because loss of services both in the narrow sense of a service as well as in the broader aspect of those intangible rights and duties of the conjugal relationship are separate elements of 'consortium'."

Quoting from Prosser on Torts, page 940 the Court said:

"The element of 'loss of services' has much the same history here as in the case of direct interference with the family relations. Originally it was indispensable to the cause of action, although the 'services' of the wife were defined rather broadly to include her general usefulness, industry, frugality—and attention in the home. Once such a loss was proved, however, recovery soon was extended to cover damages for deprivation of the society, fellowship and affectionate relations of the wife or child and the intercourse of the wife * * *".

After some further discussion the Court said:

"We think therefore, that the case (Illinois Cent. Ry. Co. v. Solinsky, 12 Tenn. App. 389), does not hold that loss of such intangible services must be proved with exactness, nor does it hold that loss of consortium is not an element of damages, but only that loss of services as an ordinary servant can and must be proved with exactness."

Mr. Barnard did not take the stand and, as above noted, there is no evidence in the record as to how much the doctors' hospital and medical bills were. However, Mrs. Barnard did testify that additional help in the home because of her injury cost about $175.

While the evidence as to loss of services and consortium in all its elements was not as full as it should have been, and there is considerable merit in the arguments of counsel for the defendant with respect to the judgment of $3,750 awarded to the husband, neverthe-

less, when we consider that Mrs. Barnard was only 26 years old at the time of the accident, and that she suffered serious and permanent injuries as described by herself and the doctor, it cannot be doubted that there was a real loss of services and consortium.

The jury, in the application of common experience and reasonable judgment, could have concluded, as they evidently did, that these losses to the husband, under all the facts and circumstances shown by the record, were serious and extensive.

In Board of Mayor and Aldermen of Covington v. Moore, 33 Tenn. App. 561, 232 S. W. (2d) 410, 414, the Court said:

"In Gibson County Electric Membership Corp. v. Hall, 32 Tenn. App. 394, 222 S. W. (2d) 689, 696, where in a personal injury case the assignment was excessiveness of the amount, this court said: 'As a general rule we do not think we ought to disturb the amount of a verdict returned by a jury of fair-minded men and approved by a fair-minded judge unless it appear to a moral certainty to be so far beyond reason that to let it stand would be a palpable injustice.' "

In City of Columbia v. Lentz, 39 Tenn. App. 350, 282 S. W. (2d) 787, 788, the Court said:

"The rule that Courts of Appeals, on an appeal from judgment on jury's general verdict finding all issues for plaintiffs in action for damages, cannot weigh evidence to determine its preponderance, but can only determine whether there is any substantial evidence to support verdict, applies, not only as to

liability of defendant, but also to injuries on which amount of damages is based.''

In Hughes v. Taylor, 29 Tenn. App. 548, 198 S. W. (2d) 337, it was said:

''Verdict of jury determining amount of damages is entitled to great weight in the Court of Appeals when the trial court has approved the verdict and there is no claim that the verdict is corrupt or dishonest.''

On the whole, we feel that the question of the value of the services and consortium lost to the husband by reason of this accident is essentially a jury question and that there is substantial evidence in the record to support the verdict, hence, that we should not substitute our judgment for that of the trial Judge and the jury.

It results that the assignment of error is overruled and the judgment of the trial Court is affirmed.

Affirmed.

Felts and Hickerson, JJ., concur.