A. K. TEMPLETON, Administrator of the ESTATE OF
ROBERT JAMES TEMPLETON, Deceased, Plaintiff
—Defendant-in-Error, v. BENTON L. QUARLES and
KENNETH P. QUARLES, Defendants—Plaintiffs-in-
Error.—374 S. W. (2d) 654.

Middle Section. July 26, 1963.

Certiorari Denied by Supreme Court January 8, 1964.

420

Paul D. Kelly, Jr., Jasper, for plaintiffs in error.

Frank C. Gorrell, Nashville, Shelby Haywood, Lewisburg, Sam Raulston, Jasper, for defendant in error.

CHATTIN, J. This suit was instituted by the plaintiff, A. K. Templeton, Administrator of the Estate of Robert James Templeton, Deceased, in the Circuit Court of Marion County, Tennessee, against the defendants, Benton L. Quarles and Kenneth P. Quarles, for the wrongful death of the plaintiff's intestate, Robert James Templeton, Deceased. Benton L. Quarles was at the time of the accident operating an automobile with the permission of its owner, the defendant, Kenneth P. Quarles. The

case was tried to a jury before the Honorable A. F. Sloan, Circuit Judge, at Jasper, Tennessee, and resulted in a verdict for the plaintiff in the sum of Twenty-Five Thousand ($25,000.00) Dollars.

Plaintiff's declaration is in four counts.

The first count charges the accident occurred on November 11, 1960, on U. S. Highway 41 some three and one-half miles south of Jasper, Tennessee, at which time plaintiff's intestate was crossing the highway on foot. That as a result of the gross, careless and wanton negligence of the defendant, Benton L. Quarles, in driving the automobile at an excessive rate of speed without keeping a proper lookout ahead, "or upon seeing him there was no reason why the defendant could not have avoided hitting him had the defendant been driving the station wagon in a safe and prudent manner," the defendant struck plaintiff's intestate inflicting serious injuries to his body from which he died within a very few minutes.

The second count charges the defendant driver violated Section 59-852 T. C. A., our speed limit statute.

The third count charges the defendant driver with the violation of Section 59-836 T. C. A., which provides that drivers of vehicles shall exercise due care to avoid colliding with a pedestrian upon any roadway.

The fourth count charges the defendant driver with reckless driving, Section 59-858 T. C. A.

To the declaration, the defendants filed a plea of the general issue.

At the conclusion of plaintiff's proof the defendants moved the court for a directed verdict. The court directed a verdict as to the second count charging a violation of

the speed limit statute, and overruled defendants' motion in all other respects.

The defendants did not stand upon their motion but introduced as witnesses the defendant, Benton L. Quarles, and his brother, Carl Quarles, who was riding in the automobile driven by defendant.

At the conclusion of all the proof, the defendants renewed their motion for a directed verdict. The trial judge sustained the motion as to the charge of gross negligence on the part of the defendants and overruled the motion otherwise.

As stated, the jury returned a verdict for the plaintiff. Judgment was entered thereupon. Defendants filed a motion for a new trial which was overruled in all respects, except as to the excessiveness of the verdict. The trial judge sustained this ground and ordered a remittitur of Ten Thousand ($10,000.00) Dollars. The plaintiff accepted the remittitur under protest and appealed to this Court, assigning as error the action of the court in suggesting the remittitur. The defendants have perfected an appeal and have assigned five assignments of error.

We will consider defendants' assignments first.

Their first and second assignments challenge the action of the trial judge in failing to direct a verdict for them at the conclusion of all the proof. It is the insistence of defendants the trial judge should have directed a verdict for them, because there was no evidence of actionable negligence on their part, and because the undisputed testimony showed plaintiff's intestate was guilty of negligence as a matter of law, which was a direct and proximate cause of his death.

■ This Court, in considering the question of whether a verdict should have been directed for the defendants, is bound by the rule that, "we must look to all the evidence, take the evidence for plaintiff as true, allow all reasonable inferences in his favor, and disregard all countervailing evidence." Hooper v. Starkey, 41 Tenn. App. 633, 297 S. W. (2d) 948; Goodrich v. Morgan, 40 Tenn. App. 342, 291 S. W. (2d) 610.

The accident happened between eight and nine P.M., on November 11, 1960, on Highway 41 some three and one-half miles south of Jasper, Tennessee, in front of a restaurant owned by Ross Payne. This highway is a heavily traveled thoroughfare between Nashville and Chattanooga. It is a paved highway thirty-six feet wide and divided into three lanes. It runs generally north and south. Payne's restaurant is on the east side of the highway and directly across the highway on the west side is a laundromat and a souvenir shop. Both of these buildings have large neon signs which light the highway at the scene of the accident.

Deceased, forty-six years of age, was employed as a truck driver for the Wilson Truck Line of Nashville, Tennessee. His regular run was from Nashville to Chattanooga. He was in good physical condition. On the night of the accident, he was on his way to Chattanooga. The lights on his truck failed and he parked his truck on the west side and directly across the highway from Payne's restaurant. He crossed the highway to the restaurant to call for a mechanic. But there was no telephone in the restaurant so he re-crossed the highway and called the mechanic. He returned to the restaurant and when the mechanic came he again crossed the highway to the truck. After the lights were repaired, he returned to the

restaurant and borrowed a pencil and returned to the truck to sign the service statement. He was on his way back to the restaurant when the fatal accident occurred. The defendant, Benton L. Quarles, was traveling north in a 1956 Chevrolet station wagon in the east lane of the three lane highway. Mr. Carl Quarles was sitting in the front seat with Benton. The Deceased ran across the highway and in front of the station wagon. All the proof shows he was hit by the right front fender of the station wagon and in the east lane of the highway.

It is undisputed in the record the defendant, driver, was traveling up a grade and that the highway is straight for approximately a quarter of a mile from the restaurant to the flat or bottom of the hill.

Ross Payne, the owner of the restaurant, testified he was sitting inside the building next to the front door. He heard "a holler" and thought someone had hit a dog. He ran outside and found Deceased. He then went across the highway and called an ambulance. He testified when he went out the door there was no traffic on the road.

He further testified the lights on his restaurant and on the buildings across the highway lighed the highway at the scene of the accident.

He stated he found the Deceased's glasses about two feet inside the east lane of the highway south of the front of the restaurant; his hat about ten feet north of his glasses; his body about one hundred eighteen feet north of his glasses; and one of his shoes, still tied, about sixty-five feet north of his body. He further testified he saw skid marks in the east lane which started just above the hat and veered to the left to the car driven by the

defendant, the front end of which came to rest in the middle lane.

Joe Cash testified prior to the accident he was traveling south on the highway and as he approached the scene he saw the Deceased in a ''trot'' going across the highway from the restaurant to the truck. He drove a few hundred yards south of the restaurant and turned around and went to the restaurant. As he was going into the restaurant he heard the Deceased slam the door on the truck and start running across the highway and when he had just got inside the building he heard tires ''squealing'' and then an impact. He turned and ran out the door and saw the body flying through the air.

Jack Murray, a state highway trooper, testified he went to the scene that night and stepped off the skid marks which were in the outside lane traveling north. The skid marks were approximately ninety-six feet in length.

Mrs. Ross Payne testified she was standing near a window in the restaurant. She heard the impact and saw the Deceased's body in the air. She stated there were no other cars on the highway at the time and none appeared on the scene until about five or ten minutes after the tragedy.

The plaintiff, A. K. Templeton, testified about a week after the accident he asked Benton Quarles how the accident happened and he answered he did not know; that he did not see the Deceased until he hit him.

Both Benton Quarles and his brother, Carl, testified they had been to the Brendalene Motel to repair a television set. They were returning to Jasper driving in the east lane of the highway at about fifty miles an hour.

They met a car traveling in the opposite direction, and just after the car passed they saw the Deceased directly in front of their car running. Benton, the driver, immediately put down his brakes but did not have time to avoid striking the Deceased.

We think there was ample evidence from which the jury could find the driver guilty of excessive speed under the circumstances prevailing at the time.

As stated, the undisputed proof is the Deceased was knocked by the impact some one hundred and eighteen feet. His body was seen flying through the air. The skid marks laid down by the station wagon were ninety-six feet in length. The impact was so great one of his shoes was found some sixty-five feet from his body still tied.

"Direct testimony is not essential to warrant a finding of excessive speed. Evidence as to the force of the impact of the collision, or as to the distance which an automobile causing an injury overshot the point of the accident before being brought to a standstill, is of significance, and may be by itself, or in connection with other circumstances, of sufficient force to warrant a jury in finding negligence as to speed, and in drawing an inference that the machine was traveling at a rate of speed such as to endanger the life or limb of persons upon the highway." Elmore v. Thompson, 14 Tenn. App. 78; Phillips-Buttorff Mfg. Co. v. McAlexander, 15 Tenn. App. 618.

We are, also of the opinion there is material evidence in the record from which the jury could find the defendant failed to keep a proper lookout ahead; and that he failed to exercise due care to avoid colliding with the Deceased.

As shown by the foregoing resume of the testimony, there is evidence from which the jury could find the Deceased ran thirty-four feet across the highway to within two feet of the east edge and which was well lighted by lights on each side thereof in view of the driver, if he had been keeping a proper lookout ahead, before being struck.

Whether Deceased was guilty of proximate contributory negligence was a jury question.

Defendants insist that the Decedent violated T. C. A. 59-835(a) and was, therefore, guilty of contributory negligence as a matter of law. But we cannot agree. T. C. A. 59-835(a) provides:

"Every pedestrian crossing a roadway at any point other than within a marked cross walk or within an unmarked cross walk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

T. C. A. 59-836 provides:

"Notwithstanding the foregoing provisions of this chapter every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

To agree Deceased was guilty of proximate contributory negligence as a matter of law, we would have to disregard the foregoing statute, T. C. A. 59-836. The statute requires a pedestrian who undertakes to cross a highway at a point between intersections other than with-

in a marked cross walk to yield the right-of-way to motorists. This does not relieve the driver of a vehicle of the duty of maintaining a proper lookout for pedestrians between intersections and to exercise due care to avoid injuring them.

The court of appeals of the State of Kentucky in construing identical statutes in the case of Ramsey v. Sharpley, 294 Ky. 286, 171 S. W. (2d) 427, said: "Although the statute requires a pedestrian crossing the street between intersections and without a marked cross walk to yield the right-of-way to vehicles on the roadway, it does not exonerate the operator of a vehicle of liability to such pedestrian if the latter is injured as the proximate result of negligence of the driver, unless the improper crossing by the pedestrian contributes to the cause of the injury and in the absence of which the accident would not have occurred. The proximate and contributory cause of the injury must be determined by the jury under our system of jurisprudence."

In our own case of De Rossett v. Malone, 34 Tenn. App. 451, 239 S. W. (2d) 366, it is said: "So also while the fact that an approaching motorist has the right-of-way may have a bearing on what is required of him by ordinary care, he is not relieved from the duty of exercising due care not to injure others who may be crossing the street. He must anticipate the presence of pedestrians not only at street crossings but between street intersections and must exercise due care to avoid injuring them." To the same effect see Seahorn v. Karr, 35 Tenn. App. 38, 242 S. W. (2d) 331.

We have not overlooked the rule that a pedestrian is required to exercise ordinary care for his own safety

while crossing a highway which may include keeping a reasonable lookout for vehicles upon the highway in order to avoid injury therefrom. His failure to keep a lookout may constitute negligence per se, but it will not necessarily do so under all circumstances. This is so because there is no imperative rule or requirement as to stopping and looking, as in crossing a railroad. Whether Deceased failed to use ordinary care in crossing the highway as he did under the circumstances was a jury question and not for the court as a matter of law. De Rossett v. Malone, supra.

Defendants' first and second assignments are overruled.

■ Defendants' third assignment is the verdict is contrary to the law. This Court has held in a number of cases such an assignment is insufficient as an assignment of error. Kinnaird v. Norris, 25 Tenn. App. 60, 150 S. W. (2d) 722; General Motors Corporation v. Dodson, 47 Tenn. App. 438, 338 S. W. (2d) 655.

Defendants' fourth assignment of error complains of the action of the court in entering judgment upon the verdict of the jury.

It is insisted by the defendants the jury reported they found the Deceased guilty of contributory negligence, but awarded plaintiff the sum of $25,000.00; and, therefore, a judgment upon such a verdict is a nullity.

The bill of exceptions discloses the jury reported as follows:

"THE COURT: Gentlemen, have you agreed on a verdict? How do you find?

"JUROR: We find both parties guilty of negligence and award Templeton $25,000.00.

"COURT REPORTER: I can't hear you.

"THE COURT: Both parties guilty of negligence?

"JUROR: Find both parties guilty of negligence, and award Templeton $25,000.00.

"THE COURT: $25,000.00? You find Quarles and his son—his brother guilty of negligence?

"JUROR: No, the man who was killed.

"ANOTHER JUROR: Both of them.

"THE COURT: You find the man that was killed and the other guilty of negligence?

"JUROR: That's right.

"THE COURT: And you set the man who was killed's verdict at $25,000.00?

"You mean by that, that you found Kenneth Quarles guilty of the proximate cause of negligence, and Templeton guilty of contributory negligence?

"JUROR: Yes, sir.

"THE COURT: So say you all, gentlemen?

"JUROR: Yes, sir."

The trial judge fully charged the jury as to proximate and remote contributory negligence. In view of the charge of the court, we do not think he committed error in accepting the verdict and entering judgment thereon. Although the jury reported they found the Deceased guilty of contributory negligence, we think it is

obvious they meant remote contributory negligence and that the trial judge so construed the verdict.

"It is the duty of the court in construing verdicts to give them the most favorable interpretation and to give effect to the intention of the jurors if that intention be permissible under the law and ascertainable from the phraseology of the verdict. If after an examination of the terms of the verdict the court is able to place a construction thereon that will uphold it, it is encumbent upon the court to do so." Tennessee Procedure in Law Cases, Section 1504, page 573; Black v. Nashville Banner Publishing Company, 24 Tenn. App. 137, 141 S. W. (2d) 908; Briscoe v. Allison, 200 Tenn. 115, 290 S. W. (2d) 864.

We may assume the jury followed the instructions of the court since there is no showing the jury did otherwise. Central Truckaway System v. Waltner, 36 Tenn. App. 202, 253 S. W. (2d) 985.

We overrule defendants' fourth assignment.

We pass now to a consideration of plaintiff's assignment of error complaining of the trial judge's action in suggesting a remittitur.

█ In considering this assignment, we must recognize the fact there is no mathematical rule or formula for computing the amount of damages in a negligence case.

"There is no rule of law, and we do not believe any such can be devised, to guide the jury and the trial court in deciding what would be reasonable compensation in personal injury cases, or what amount, if any, should be deducted in mitigation of damages. The law has left it to the impartial judgment of twelve good and lawful

men.'' McCullough v. Johnson Freight Lines, Inc., 202 Tenn. 596, 308 S. W. (2d) 387.

■ The measure of damages in the case at bar is the pecuniary value of the life of the Deceased, plus his funeral expenses. There is no proof of any pain or suffering. He was forty-six years of age, in good health, with a life expectancy of twenty-three years. He was single and left no children. His only heirs are two sisters and three brothers.

His funeral expenses were $1100.00 It was stipulated at the trial his gross earnings for the three years prior to his death were $14,000.00.

''The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence.'' Reeves v. Catignani, 157 Tenn. 173, 7 S. W. (2d) 38.

■ This Court will give great weight to the action of the trial court in ordering a remittitur, and will not disturb the same unless the discretion of the court has been abused. Spence v. Carne, 40 Tenn. App. 580, 292 S. W. (2d) 438; Stark v. Yost, 47 Tenn. App. 28, 334 S. W. (2d) 954.

The jury in this case found the Deceased guilty of remote contributory negligence. The trial court in his memorandum opinion stated he was of the opinion the verdict was somewhat excessive under the facts and suggested the remittitur. It is evident the court agreed with the jury the Deceased was guilty of remote contributory negligence and for this reason thought the verdict should be further reduced or a new trial ordered.

However, we think it is evident the jury in fixing their verdict took into consideration the remote contributory negligence of the Deceased. It is rather difficult to say that the life of a forty-six year old man in good health with an earning capacity of $4500.00 annually is not worth more than $25,000.00 even though he is found to have remotely contributed to his own death. Assuming he had lived only half of his life expectancy of twenty-three years and remained in good health, he could have earned twice the amount of the verdict based upon his earning capacity at the time of his death. The remittitur as suggested by the trial court would reduce the verdict by two-fifths and which would amount to less than four years of his potential earning capacity.

For these reasons we think the amount allowed by the verdict of the jury was not excessive, and the trial court should have not suggested a remittitur. It is, therefore, our duty under authority of T. C. A. 27-118 to restore the judgment to the full amount awarded by the jury. Harber v. Smith, 40 Tenn. App. 648, 292 S. W. (2d) 468.

Plaintiff's assignment of error is sustained.

What we have said with respect to plaintiff's assignment necessarily disposes of defendants' fifth assignment of error to the effect the trial court erred in not granting defendants' motion for a new trial because the verdict was so excessive as to indicate passion, prejudice, and caprice on the part of the jury.

Finally, it is argued by defendants the trial court committed reversible error in charging the doctrine of last clear chance.

We cannot consider this argument since the record discloses defendants did not object to the charge at the time. Nor did defendants call this to the attention of the court in their motion for a new trial. Furthermore, there is no assignment of error as to the charge of the court.

"Everything which occurs in the progress of the trial and which must be preserved by bill of exceptions must be made the basis of a motion for new trial if complaint is made thereof upon appeal." Bostick v. Thomas, 137 Tenn. 99, 191 S. W. 968; Barnard v. Binns, 46 Tenn. App. 47, 326 S. W. (2d) 676. See also Rule 11(5) of the Court of Appeals.

The action of the trial court in ordering the remittitur is reversed and a judgment will be entered in this Court for plaintiff against the defendants for $25,000.00 and the costs.

Shriver and Humphreys, JJ., concur.